## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| FOUNTAIN LEASING, LLC, | §§§ | |
| Plaintiff, | §§§ | |
| v. | §§ | No.: _____ |
| MARK BROOKS, | §§§ | |
| Defendant. | §§ | |

## COMPLAINT

Comes the Plaintiff, by counsel, and for cause of action would show:

1.     The Plaintiff is a Tennessee limited liability company with its principal place of business in Knoxville, Tennessee.

2.     The Defendant Mark Brooks is a resident of Georgia and may be served with process at 1512 Navigator Circle, Dacula, Georgia 30019.

3.     This court has jurisdiction in this case pursuant to 28 USC §1332 as the parties reside in different states and the amount in controversy exceeds $75,000.00.

4.     The Defendant is the principal of BRI Utility Construction, Inc. ("BRI"). BRI entered into five (5) equipment leases with the Plaintiff for the leasing of equipment to be used in his business. Mark Brooks personally guaranteed each lease. A copy of each lease is attached hereto as Collective Exhibit 1 along with the signed guarantee on each lease.

5.     Said leases are now in default. Demand for payment has been made but to no avail.

1

6.      As of March 9, 2020, the sum of $599,131.63 is due and owing on the leases. See attached as Exhibit 2 the affidavit of Warren Payne.

7.      The leases and guarantees provide for attorney fees and all costs of collection and the Plaintiff seeks said attorney's fees, interest, and all associated costs with the collection of this matter and in the institution of this suit.

WHEREFORE, premises considered, the Plaintiff prays:

1.      That it be awarded a judgment against Defendant Mark Brooks in the amount of $599,131.63 on his personal guarantee plus its attorney's fees and costs for the five leases.

2.      That it receive such other and further general relief to which it shows itself entitled.

/s/ Lynn Tarpy___
Lynn Tarpy (006017)
TARPY, COX, FLEISHMAN
& LEVEILLE, PLLC
1111 N. Northshore Drive
Suite N-290
Knoxville, Tennessee 37919
(865) 588-1096

2

# AFFIDAVIT

STATE OF TENNESSEE §
§
COUNTY OF KNOX §

Comes Warren Payne and after being duly sworn states that the following is based upon his own personal knowledge:

My name is Warren Payne and I am over 18 years of age. I am the President of Fountain Leasing, LLC, and am familiar with the books and records of the company and especially for the BRI Utility Construction, Inc., account. According to those books and records, BRI Utility Construction, Inc, owes Fountain Leasing, LLC, $599,131.63 after all credits have been given plus attorney fees for the five leases it had with Fountain Leasing, LLC .

I am also personally knowledgeable that Mark Brooks personally guaranteed the obligation of BRI Utility Construction, Inc., and that he is responsible for payment of $659,131.63 on the account plus attorney fees and costs of collection.

Further the affiant saith not.

_Warren Payne_ 4/7/20
Warren Payne

Sworn to and subscribed before me this 7th day of ~~March~~ April, 2020.

_Beverly E. Peterson_
Notary Public

My commission expires: 04/27/2023



EXHIBIT
2



January 31, 2019

Mark Brooks(Corporation)
BRI Utility Construction, Inc
Post Office Box 2025
Dacula, GA 30019

Re:     One (1) 2006 Caterpillar D6RXL Crawler Dozer – SN Ending: B00382
        One (1) 2001 Volvo A35D Off Road Truck – SN Ending: V61114
        One (1) 2004 Caterpillar 953C Crawler Loader – SN Ending: N04558


Dear Mr. Brooks:

Pursuant to our previous conversations, I am pleased to offer the following commitment of lease financing for the equipment referenced below.  With that, our commitment is as follows:

| | |
|---|---|
| **Equipment:** | One (1) 2006 Caterpillar D6RXL Crawler Dozer; One (1) 2001 Volvo A35D Off Road Truck; and One (1) 2004 Caterpillar 953C Crawler Loader |
| **Lease Amount:** | $213,782.00 |
| **Term:** | 48-months |
| **Payments:** | $5,834.82 per month (6% Gwinnett County sales tax included) |

**End of Lease Options:**

1)      At the end of the lease, the Lessee may terminate the lease for $1.00.

**Advance Payments:**     This commitment requires two advance payments, sales tax, UCC, and doc fees due at closing.  A breakdown of that amount is as follows:

| | |
|---|---|
| Two Advance Payments | $11,009.10 |
| Filing Fees | $     20.00 |
| Sales Tax | $    660.55 |
| Doc Fees | $    350.00 |
| | **$ 12,039.64** |

**Additional Requirements:**

1)      This commitment requires the full joint & several personal guaranty of:
        **Mr. Mark Brooks / BRI Utility Construction, Inc**

2)      This commitment requires additional collateral in the form of:
        **N/A**

EXHIBIT
COLLECTIVE
1

This commitment does not include the cost of insuring the equipment, maintenance or any applicable sales taxes. all of which are the responsibility of the lessee. **It is understood that Fountain Leasing, LLC, its employees and/or officers, do not provide tax, legal or accounting advice. This letter is not intended to provide, and should not be relied on for, tax, legal or accounting advice. You should consult your own tax, legal and accounting advisors before engaging in any transaction.**

Additionally, please note that payment remittance is required on a timely basis each month within 10 days of the payment due date. Should any payment be received and posted more than 10 days after its respective due date, a 5% late charge will be assessed and should be included in the next payment remittance. Further, should any check remitted for lease payment(s) be returned due to insufficient funds, a $100 charge will be assessed and should be included with the replacement of the insufficient funds check. Any and all information provided by your organization has been & will be treated as confidential. This commitment is contingent upon the satisfactory inspection/photograph of all equipment/collateral under the lease.

The terms and conditions of this commitment can be considered good and valid for a period of 10 business days and therefore, shall expire on February 12, 2019. If this commitment is acceptable to you, please indicate by signature below:

**ACCEPTED:**

This commitment is accepted in its entirety as evidenced by the signatures of the parties below. Further, each party affirms and acknowledges that they have read this commitment in full & accept it as such. In addition, the undersigned affirms that the named lessee is a sole proprietorship and as such this equipment is for business/commercial use. Failure to formally accept this commitment by February 12, 2019 releases Fountain Leasing LLC of any binding commitment with regards to the lease described above.

_____     1-31-2019
Mark Brooks                                          Date

In closing, if you would like to see this proposal structured differently, please let me know as I can assist you in offering a number of different lease financing structures to meet your needs. Thank you for your time and I look forward to working with you in the near future.

Sincerely,
Fountain Leasing, LLC

Ed Walraven
Vice President

*I reviewed this letter with Mark Brooks at 6:50 AM on 1-31-2019.*

# Fountain Leasing, LLC

# LEASE AGREEMENT

| LESSOR: | FOUNTAIN LEASING, LLC<br>8331 E. Walker Springs Ln, Suite 203<br>Knoxville, TN 37923 | Lease No: | **2019 - 0147** |
|---|---|---|---|

**LESSEE:**

| Contact: | **Mark Brooks** | (770) 237-8990 | Supplier: | **BRI Utility Construction / Lease BuyBack** | |
|---|---|---|---|---|---|
| Full Legal Name: | **BRI Utility Construction, Inc.** | | Sales Person: | **Mark Brooks** | Phone: (770) 237-8990 |
| Street Address: | **P.O. Box 2025** | | Address: | **Post Office Box 2025** | |
| City: | **Dacula** | St: **GA** Zip: **30019** | City: | **Dacula** | St: **GA** Zip: **30019** |

| QUANTITY/ ITEM DESCRIPTION | MODEL NO. | SERIAL NO. |
|---|---|---|
| 2006 Caterpillar D6RXL Crawler Dozer - SN: GJB00382; 2001 Volvo A35D Off Road Truck - SN: V61114; 2004 Caterpillar 953C Crawler Loader - SN: 2ZN045 | | |
| See Exhibit A | | |

EQUIPMENT LOCATION, IF OTHER THAN ABOVE ADDRESS OF APPLICANT-LESSEE

| RENTAL TERMS | | RENTAL PAYMENT AMOUNT | | SECURITY DEPOSIT(s) | |
|---|---|---|---|---|---|
| Rent Commencement Date: | 48 | Payments of | $5,504.55 | Check For This Amount Many Lease Application | |
| Terms in months from Rent Commencement Date | 48 Mos. | Tax: | $330.27 | $12,039.64 | |
| Rental Payment Period is Monthly Unless Otherwise Indicated | | Total | $5,834.82 | Last 2 Month(s) payment(s)<br>(Includes Fees, and State and County Taxes as Required) | |

## PERSONAL GUARANTY

The undersigned guarantors jointly and severally unconditionally guarantee the prompt payment when due of each monthly rental payment due and payable under the foregoing Lease Agreement. To enforce the liability of guarantors hereunder, Lessor shall not be required, first to (a give) guarantors notice of Lessee's default; (b) repossess the equipment; or (c) attempt to enforce the liability of Lessee under the Lease Agreement. Lessor may from time to time accept late payments of rental and may extend the terms of the Lease Agreement without defeating or diminishing this continuing guaranty. This is a guarantee of payment and not of collection.

The Guarantors acknowledge that execution of this guarantee is a material part of the consideration upon which Lessor relies in consummating this Lease Agreement and that this guarantee is executed to the Lessor to consumate the Lease Agreement.

By: X _(signature)_    X _____    Date X **1-31-2019**

Mark Brooks    Signature(s)

**1. LEASE:** Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the unit(s) of machinery, equipment, chattels, or other personal property described in this Lease, described in any schedules attached hereto and incorporated herein and made a part hereof, or described in any addenda subsequently entered into by the parties and incorporated herein by reference, hereafter referred to as the "Equipment", upon the terms and conditions herein set forth in this Lease Agreement. Under this Lease Agreement the term "Rental Commencement Date" Shall be the date that the equipment is delivered to and accepted by Lessee. The term "Commencement Date" shall be the earlier of the date this lease agreement is executed by Lessee or the date lessee becomes liable for the cost of the equipment. The Term of this lease shall commence on the "Rental Commencement Date", and the first period rental shall be paid on that date. Subsequent monthly rent due during the lease term shall be made on the same date of each successive calendar month. If any rental payment is not received within 10 days of the due date a late charge of no less than 5% of the monthly payment amount shall be assessed.

Lessor acknowledges receipt of the first period rent. Lessee agrees to pay the remaining rent at such times and in such amounts as stated above until the total rent shall have been paid in full pursuant to the terms hereof. Any amounts received by Lessor upon execution of this Lease by Lessee in excess of the first period rental and any other sums required to be paid by Lessee shall be held as security for Lessee's faithful performance of the terms of this Lease. The amount of the Security Deposit to be paid by Lessee is specified above. All payments of rent shall be made at the office of Lessor at its address set forth in this Agreement or at such other places as Lessor may designate and other identification data. Further, Lessee authorizes Lessor to fill in dates called for under the terms of this Lease. All rental payments shall be made punctually on the rental date set forth in this Lease, and all rental payments which fall due on a nonbusiness day or holiday will be due on the next regular business day of Lessor.

**2. RENTALS:** The rental set forth above is an estimate, and shall be adjusted proportionally if Lessor's cost of purchasing and delivering the Equipment to Lessee, including taxes, transportation charges and other charges differs from the estimated cost of such Equipment. Lessee hereby authorizes Lessor to correct the figures and increase or decrease the rental set forth above where Lessor's actual cost for the Equipment is known.

**3. WARRANTIES:** Lessee acknowledges and agrees that neither the supplier nor any salesman or other agent of the supplier is an agent of the Lessor. NO SALESMAN OR AGENT OF SUPPLIER IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE, and no representation as to the equipment or any other matter by the supplier shall in any way affect Lessee's duty to pay the rent and perform its other obligations as set forth herein.

**4. SELECTION OF EQUIPMENT:** LESSEE ACKNOWLEDGES AND AGREES THAT THE EQUIPMENT IS OF A SIZE, DESIGN, CAPACITY AND MANUFACTURE SELECTED BY LESSEE AND LESSEE ACKNOWLEDGES THAT LESSOR IS SPECIFICALLY AUTHORIZED TO ORDER AND PURCHASE THE EQUIPMENT COVERED BY THE TERMS OF THIS LEASE; THAT SUCH PROPERTY IS IN GOOD OPERATING ORDER, REPAIR, CONDITION, AND APPEARANCE; THAT LESSEE IS SATISFIED THAT THE SAME IS SUITABLE FOR ITS PURPOSES. LESSOR IS NOT A MANUFACTURER OF THE EQUIPMENT OR A DEALER IN SIMILAR EQUIPMENT, DOES NOT INSPECT THE EQUIPMENT PRIOR TO DELIVERY TO LESSEE, AND HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATION, WARRANTY OR COVENANT WITH RESPECT TO THE CONDITION, QUALITY, DURABILITY, SUITABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR MERCHANTABILITY OF THE EQUIPMENT IN ANY RESPECT, OR ANY OTHER REP-RESENTATION, WARRANTY OR COVENANT, EXPRESS OR IMPLIED. LESSOR SHALL NOT BE LIABLE TO LESSEE FOR ANY LIABILITY, LOSS, OR DAMAGE CAUSED OR ALLEGED TO BE CAUSED DIRECTLY OR INDIRECTLY BY THE EQUIPMENT. LESSEE HAS SELECTED THE PROPERTY TO BE LEASED AND ITS ORDERED BY LESSOR FOR THIS LEASE AT LESSEE'S ENTIRE RISK AND DISCRETION, IF APPLICABLE, ANY SERVICES OR MAINTENANCE CONTRACTS RELATING TO THE USE AND MAINTENANCE OF THE EQUIPMENT SHALL BE STRICTLY BETWEEN THE LESSEE AND THE PROVIDER OF THOSE SERVICES OR MAINTENANCE, AND LESSOR IS RELIEVED OF ANY RESPONSIBILITY FOR SUCH SERVICE CONTRACTS OR MAINTENANCE CONTRACTS. LESSEE AGREES TO BE RESPONSIBLE FOR ANY REPAIR, ADJUSTMENT, MAINTENANCE, SERVICE, WORN-OUT AND /OR REPLACEMENT PARTS. LESSEE WAIVES ALL RIGHTS TO MAKE CLAIMS AGAINST LESSOR AND LESSOR'S ASSIGNEE FOR BREACH ON ANY WARRANTY OF ANY KIND WHATSOEVER, AND LESSEE LEASES THE EQUIPMENT "AS IS". LESSOR HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATION, WARRANTY OR COVENANT THAT THE EQUIPMENT COVERED BY THE TERMS OF THIS LEASE AGREEMENT COMPLIES WITH ANY GOVERNMENT REGULATIONS OR STANDARDS. There shall be no abatement of the rentals express or implied on the equipment covered by any lease hereunder. During the period of any lease hereunder, in which Lessee renders faithful performance of its obligations, Lessor hereby assigns, to the extent assignable to Lessee, any factory or dealer warranty, whether Lessor. All proceeds of such a warranty recovery shall be used to repair or replace the equipment. Lessor authorizes Lessee to obtain whatever service the manufacturer customarily renders provided that such service shall not be at the expense of Lessor.

THIS LEASE CONTAINS ADDITIONAL PROVISIONS SET FORTH ON THE REVERSE SIDE HEREOF, ALL OF WHICH ARE MADE A PART OF THIS LEASE.

| LESSOR: | FOUNTAIN LEASING, LLC | DATE X **1-31-2019** |
|---|---|---|
| SIGNATURE | _(signature)_ | LESSEE: **BRI Utility Construction, Inc.** (Full Legal Name - Same as Above) |
| TITLE | **VICE President** | X _(signature)_<br>SIGNATURE<br>TITLE X **P** |

## TERMS AND CONDITIONS OF LEASE (CONTINUED)

5. **OWNERSHIP LESSOR.** Each item of the equipment leased h___ shall at all times remain the sole and exclusive property of the Lessor, and ___ shall have no right, title or interest therein or thereto, except as expressly set forth in the lease. Lessee shall, at any time, and shall at all times remain property ___ not withstanding its being fixed or attached to real estate in any manner wh____. Lessee shall affix and keep plates or decals identifying Lessor as owner of equipment upon a prominent place on each item of the equipment. Lessee will obtain for the Lessor any and all waivers of right, title, and interest in the equipment under lease from any mortgagee or landlord whatsoever. The only interest Lessee shall have in the equipment is that of lessee under this lease.

6. **USE.** So long as lessee shall not be in default under this lease, Lessee may possess and use the equipment in accordance with this lease. Lessee shall at all times at its own cost and expense: (a) comply with all the laws, ordinances and regulations relating to the use, operation or maintenance of the equipment; (b) put the equipment only to the uses contemplated by the manufacturer; (c) keep and maintain equipment in first class order, repair, condition, and appearance; (d) keep the equipment at the location listed above and not permit the equipment to be removed without prior written consent of the Lessor. Further, during the term of this Agreement Lessee will not allow the subject equipment to be services or maintained by other that an authorized manufacturer, manufacturer's representative, or service agent.

7. **LICENSING, REGISTRATION, AND TAXES.** Lessee shall obtain such licensing and registration of the equipment as is required by law. As additional rent, Lessee shall pay and discharge when due all license and registration fees, assessments, sales, use, property, excise, ad valorem, and all other taxes, governmental charges, and fees (excluding any tax measured by Lessor's net income) together with any penalties, fines, or interests applicable thereby, now or hereafter imposed by any state, federal, or local government upon or relating to the equipment or the use, registration, rental, shipment, transportation, delivery, or operation thereof, whether the same be payable by or assessed to Lessor or Lessee.

8. **LESSOR'S INSPECTION.** Lessor shall have the right, during normal business hours, to enter the premises where the equipment may be located for the purpose of inspecting and examining the equipment to insure compliance by Lessee, with its obligations under this Lease. Lessee shall immediately notify Lessor of any accident connected with the malfunctioning or operation of the equipment including in such report, the time, place and nature of the accident, damage caused to property, the names and address of persons injured, and of witnesses and such other information as may be pertinent to Lessor's investigation of such accident. Lessee shall notify Lessor immediately of any attachment or other judicial process affecting any item of equipment leased under the terms of this Agreement.

9. **INDEMNITY.** Lessee assumes all risk and liability and shall indemnify Lessor from and against any and all claims, actions, suits, proceedings, costs, expenses, damages, and liabilities, including reasonable attorney's fees resulting from the use, operation, or storage of the equipment and for injuries or death to persons or damage to property arising there from, regardless of the manner in which or to whom or to what property the injury or damage occurs. Lessee further indemnifies Lessor, its successors, assigns, and agents from any and all claims, actions, damage, liabilities, and expenses including reasonable attorney's fees, arising out of the equipment, including without limitation, the manufacture, selection delivery, possession, use, operation, or return of the equipment. Lessee will not assert against Lessor any claim arising from a breach of warranty by an equipment vendor or manufacturer. Further, Lessee will make no claim against Lessor for loss of anticipatory profits or other incidental, consequential, direct or indirect damages. Lessee agrees to indemnify Lessor against all claims or trademark, patent, or copyright infringement.

10. **ASSIGNMENT BY LESSEE.** Lessee shall not assign, pledge, or hypothecate any lease hereunder, nor shall Lessee sublet or lend the equipment or any part thereof without the prior written consent of Lessor. It is anticipated that no assignment or assignments will be approved by Lessor.

11. **ASSIGNMENT BY LESSOR.** Lessor may assign, pledge, or in any other way transfer any lease hereunder either in whole or in part, without notice to the Lessee.

12. **LOSS AND DAMAGE.** LESSEE ASSUMES ALL RISK OF LOSS OR DAMAGE TO THE EQUIPMENT FROM ANY AND EVERY CAUSE WHATSOEVER, WHETHER OR NOT SUCH LOSS OR DAMAGE IS COVERED BY INSURANCE OR THE EQUIPMENT. No loss or damage to the equipment or to any part thereof shall relieve Lessee of any obligation under this lease hereunder. In the event of loss or damage, Lessor shall have the option to require Lessee to: (a) repair or restore the equipment to good condition and working order, or (b) replace the equipment with similar equipment in good repair, condition or working order with clear title thereto in the name of Lessor or (c) pay Lessor in cash the "stipulated loss value", which is defined as the greater of: (1) the then current value of such equipment immediately prior to the loss or damage as determined by the Lessor, or (2) the then unpaid balance of rentals for the rent term applicable to such equipment plus a reasonable residual value. Upon payment of the stipulated loss value, any lease hereunder shall terminate only with respect to the item of equipment for which Lessee has paid; and Lessee shall become entitled to said equipment in its then existing condition without any warranty of Lessor.

13. **INSURANCE.** Lessee, at its own expense, shall keep equipment insured against all risk of loss or damage from every cause whatsoever, for not less than the replacement cost when new of said leased equipment without consideration for depreciation and shall carry public liability insurance, both personal injury, and property damage covering the equipment and LESSEE SHALL BE LIABLE FOR ANY LOSS NOT COVERED BY INSURANCE. All said insurances shall be in form and amount with companies satisfactory to Lessor. All insurance for loss or damage shall provide that Lessor is a loss payee and that losses, if any, shall be payable to Lessor; and all such liability insurance shall include Lessor as named insured. The proceeds of any public liability or property damage insurance shall be payable first to the Lessor, to the extent of Lessor's ability; if any, the balance, payable to Lessee. The proceeds of any theft, fire, extended coverage, collision, or other insurance providing coverage of risks of loss to owners of interest in the property subject to any lease hereunder, shall be payable solely to Lessor and shall be applied by Lessor toward payment of the obligations of the Lessee under paragraph 12 hereof, the balance, if any, of the proceeds to be the property of Lessor. Lessee shall pay the premiums therefor, and deliver to Lessor, policies of insurance or duplicates thereof or other evidence satisfactory to Lessor of insurance coverage. Each insurer shall agree by endorsement upon the policy or policies issued by it, or by independent instrument furnished to Lessor, that it will give Lessor 30 days prior written notice to the effective date of any alteration or cancellation of such policy. Lessee hereby irrevocably appoints Lessor as Lessee's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any said insurance policy. In case of the failure of Lessee to procure or maintain said insurance effective on the date of shipment of the equipment, Lessor shall have the right, but shall not be obligated, to effect such insurance or compliance on behalf of Lessee. In that event, all monies spent by and expenses of Lessor effecting such insurance or compliance, shall be deemed to be additional rent and shall become due and owed forthwith and Lessee pay the same with the monthly payment of rent next due after receipt of notice from Lessor.

14. **SURRENDER.** Upon the expiration or early termination of any lease hereunder, lessee shall return each item of equipment to Lessor, free of all advertising or insignia placed thereon by Lessee, in good condition, repair or working order, ordinary wear and tear accepted. The equipment shall be surrendered by Lessee at its sole cost and expense, either: (a) By delivering the equipment to any location selected by Lessor within the country in which equipment was delivered to Lessee or within the country to which the equipment was moved with Lessor's consent, or, (b) By delivering same as directed by Lessor, freight collected. If, upon termination of this Agreement, for any reason, Lessee fails or refuses to return equipment to Lessor as herein provided, Lessor, at its sole option, shall have the right without notice or demand to enter Lessee's premises or any premises where the equipment may be found, forcibly if necessary, and take possession of and remove the equipment without legal process and without liability or suit, action, or other proceeding by the lessee; and remove the same. Lessee hereby releases any claim or right of action of trespass or damages caused by reason of such entry and removal.

Lessee shall have no option to purchase or otherwise acquire title to or ownership of any of the equipment and shall have only the right to use the same under the terms and provisions of this lease, provided, however, that if the Lessee has paid in full all rentals owing hereunder and is not then in default hereunder, and if the blank space after "Purchase Price" below has been filled in, then Lessee shall have the option, upon giving at least 30 days' prior written notice to Lessor to purchase said equipment, AS AND WHERE IS, without any warranty whatsoever on the part of the Lessor, upon payment of the Purchase Price. The Purchase Price shall be ___.

15. **DEFAULT.** If the Lessee defaults in the payment of any sum of money to be paid under any lease hereunder, and such default continues for a period of 5 days after the date on which the same shall become due and payable, or if Lessee fails to observe or perform any covenant, condition, or obligation, required to be performed by Lessee under any lease hereunder, and Lessee has not taken steps to remedy such default within 5 days after the occurrence of such default, or if lessee or any guarantor of Lessee's obligations commence any act of bankruptcy, or any proceeding under any bankruptcy act is commenced by or against Lessee; or if a writ of attachment or execution is levied on any item of equipment and is not discharged within 5 days thereafter, or if a receiver or trustee is appointed to take possession of any item of equipment leased hereunder, or if the condition of Lessee's affairs or the affairs of any guarantor of Lessee's obligations change so as to in the Lessor's judgment materially impair the Lessor's security or increase the credit risk involved, or if Lessee defaults on any other Lease Agreement entered into by and between Lessor and Lessor or any other obligation for payment or borrowed money, or if any warranty, representation, or statement made or furnished by lessee or any guarantor of Lessee's obligations for or on behalf of Lessee proves to be false or misleading in any material respect when made or furnished, or if there is an occurrence of loss, theft, substantial damage or destruction attempted sale by the Lessee, subletting, or partial possession with any act of the equipment, or any breach of representation or warranty in the Agreement by Lessee, or any assignment of the equipment covered by the terms of this lease for the benefit of Lessee's creditors, then: Lessor, at its option, may exercise one or more of the following remedies with respect to any lessee hereunder (a) declare the remaining unpaid installments of rent at once due and payable or (b) terminate this Lease and, with or without legal process, enter in or upon Lessee's premises and remove said property with or without notice to Lessee, and subsequently sue for damages suffered from the breach by Lessee, and Lessee hereby releases any claim or right of action for trespass or damages caused by reason of such entry or removal, or (c) terminate the Lease and, with or without legal process, enter in or upon Lessee's premises and remove said property with or without notice to Lessee and sell or lease the property at such price as Lessor determines is reasonable and apply the proceeds of the sale or lease first to the expense of the sale or lease, including reasonable attorney's fees, and second to the total unpaid rental due for the term of this Lease and Lessee shall pay Lessor any deficiency of (d) Lessor may require Lessee to assemble the equipment and make it available to Lessor upon Lessor's request, or (e) Lessor may sell or lease the equipment at public or private sale or release without Lessor's permission, or (f) Lessor may recover monetary damages, or (g) Lessor may use Lessee's place of business for purposes of displaying and selling the equipment for enforcing the terms of this Agreement at no cost to Lessor, or (h) pursue any fee for enforcing any part of this Lease. LESSEE ACKNOWLEDGES AND FULLY UNDERSTANDS THAT LESSEE MAY HAVE THE LEGAL RIGHT TO AN OPPORTUNITY FOR A HEARING PRIOR TO REPOSSESSION OF THE EQUIPMENT DESCRIBED IN THIS AGREEMENT AND ANY SUBSEQUENT SCHEDULES, AMENDMENTS, OR ENDORSEMENTS HERETO IN THE EVENT OF LESSEE'S DEFAULT UNDER THE TERMS AND CONDITIONS OF THIS AGREEMENT, WITH FUL KNOWLEDGE OF THIS RIGHT, LESSEE, BY EXECUTING THIS EQUIPMENT LEASE AGREEMENT HEREBY WAIVES THE SAME.

16. **LESSEE'S INSPECTION.** Lessee shall inspect the equipment within five (5) business days after its arrival. Unless within five business days, Lessee gives written notice to Lessor specifying any defect in or other proper objection to the equipment, Lessee agrees that it shall be conclusively presumed as between Lessor and Lessee, that Lessee has fully inspected the equipment, that equipment is in full compliance with the terms of this lease, and in good condition and repair, and that Lessee is satisfied with and has accepted the equipment. In case Lessee gives such written notice with respect to any item of the equipment, Lessee shall, on demand by Lessor, pay Lessor any amounts theretofore paid or owing to Lessor in respect to the purchase of such item of equipment and upon such payment Lessee shall be subrogated to Lessor's claim, if any, against the manufacturer or other supplier thereof.

17. **ATTORNEY'S FEES.** In the event of any action at law or suit in equity in relation to this lease, in addition to all other sums which Lessee may be called upon to pay, will pay to Lessor a reasonable sum for its attorney's fees.

18. **HOLDING OVER.** Any use of equipment by Lessee beyond the terms of any lease hereunder shall be deemed an extension of the original lease on a month-to-month basis and all obligations of Lessee shall continue during such holding over. During any such holding over, Lessor may terminate such lease and take possession of the equipment upon demand after thirty (30) days written notice to Lessee.

19. **NON WAIVER.** No waiver of any of Lessee's obligations, conditions, or covenants shall be deemed to take place except such waiver that may be in writing and signed by Lessor.

20. **APPLICABLE LAW.** This Equipment Lease Agreement shall be of no force and effect until accepted in writing by an officer of Lessor at Knoxville, Tennessee. Upon such acceptance this Lease shall be regarded as a Tennessee contract to be governed by and construed according to the laws of the State of Tennessee. In the event any dispute arising under the terms of this Agreement shall require litigation, the proper and sole forum for such litigation shall be the courts of law or equity in Knox County, Tennessee.

21. **BOOKS AND RECORDS.** Lessee shall keep books and records in accordance with good accounting practice and shall deliver to Lessor balance sheets, profit and loss statements and any other financial information in such form and at such times as Lessor may require.

22. **NATURE OF TRANSACTION.** Lessor makes no representation, express or implied, concerning the legal or accounting character of the transaction evidenced hereby for tax or other purposes. Lessee is advised to consult with tax counsel or other professional for guidance.

23. **NOTICES.** All notices required of permitted under any lease hereunder shall be sufficient if delivered personally or mailed to party at the address set forth herein. Any such notice shall be effective 48 hours after it has been deposited in the United States mail, duly addressed and postage prepaid.

24. **SECURITY DEPOSIT.** The amount of the security deposit paid by Lessee is stated on the front page of this Lease Agreement. This security deposit is paid by Lessee to secure Lessee's covenants under the terms of this Lease. The parties agree that said deposit will not bear interest and may be commingled with other funds of Lessor. Further, in the event of any default under the terms of this Agreement said security deposit, at Lessor's option and total discretion, may be applied to satisfy any obligation of Lessee which may be in default under the terms of this Agreement. The payment of this security deposit and its existence shall not excuse in any way Lessee from any obligations under the terms of this Agreement.

25. **FURTHER ASSURANCE.** Lessee shall execute and deliver to Lessor, upon Lessor's request, such instruments and assurances as Lessor deems necessary or advisable for the confirmation or perfection of this lease and Lessor's rights hereunder. Where so provided by law, Lessor may execute and file evidence of its ownership in said equipment.

26. **LEASE IRREVOCABLE.** This lease is irrevocable for the full term hereof and the rent shall not abate by any reason of termination of Lessee's right of possession and/or the taking of possession by the Lessor or any other reason.

27. **ENTIRE AGREEMENT.** This instrument constitutes the entire agreement between parties. No employee or agent is authorized to bind or modify any term hereof.

28. **OFFSET.** Lessee hereby waives any existing or future claims for offset against rent or any other payments which Lessee is obligated to pay to Lessor under the terms of this Lease Agreement.

29. **UCC FILINGS.** Lessor and Lessee agree that a copy or reproduction of this lease may be filed as a financing statement and shall be sufficient as a financing statement under the Uniform Commercial Code. Lessee shall execute or obtain and deliver to Lessor, upon Lessor's request, such instruments, financing statements and assurances, including without limitation, waivers of interest of owners or mortgagees or real estate upon which the equipment is located, as Lessor deems necessary or advisable for the confirmation, protection or perfection of the Lease and Lessor's rights hereunder and will pay all costs incident thereon. Lessor may file or record a financing statement with respect to this Lease or the equipment so as to give notice to any interested parties. Any such execution, delivery, filing or recording shall not be deemed factors in determining whether or not this Lease is intended as security under the Uniform commercial code.

30. **LESSEE REPRESENTS AND WARRANTS** THAT IT HAS THE FULL POWER, AUTHORITY AND LEGAL RIGHT TO ENTER INTO AND PERFORM THIS LEASE AND ANY EXHIBITS OR SCHEDULES HERETO, THAT IT WILL SUPPLY LESSOR WITH PROOF THAT ALL REQUISITE CORPORATE ACTION (IF LESSEE IS A CORPORATION) HAS BEEN TAKEN, THAT THE EXECUTION OF THIS LEASE, ANY EXHIBIT OR ANY SCHEDULE, DOES NOT CONTRAVENE ANY AGREEMENT TO WHICH LESSEE IS A PARTY (INCLUDING ITS ARTICLES OF INCORPORATION OR BY-LAWS IF LESSEE IS A CORPORATION), AND THAT NO MORTGAGE DEED OF TRUST, CHARTER, LEASE OR ANY OTHER LIEN OR SECURITY INTEREST OF ANY TYPE WHICH NOW COVERS OR AFFECTS ANY PROPERTY OR INTEREST OF LESSEE, WILL ATTACH TO THE EQUIPMENT.



**Fountain Leasing, LLC**

November 26, 2018

Mark Brooks
BRI Utility Construction, Inc
PO Box 2025
Dacula, GA 30019

Dear Mr. Brooks:

I am pleased to offer the following commitment of lease financing on the following piece of equipment: **2007 Caterpillar D6N LGP Crawler Dozer – SN Ending: Y00166**. The terms and conditions of this commitment are as follows:

| | |
|---|---|
| **Lessee:** | BRI Utility Construction, Inc |
| **Equipment:** | 2007 Caterpillar D6N LGP Crawler Dozer |
| **Term:** | 48 Months |
| **Amount:** | $78,000.00 |
| **Purchase Option:** | At the end of the lease the buyout is $1.00. |
| **Payments:** | $2,128.87 per month   (including 6% Gwinnett County sales tax) |
| **Advance Payment:** | This commitment requires two advance payments plus fees due at closing. A breakdown of that amount is as follows: |

| | |
|---|---|
| Advance payment | $ 4,016.74 |
| Tax | $   241.00 |
| UCC Fee | $     20.00 |
| Doc Fees | $   350.00 |
| | |
| **Total:** | **$ 4,627.74** |

Fountain Leasing, LLC  •  366 Powder Springs Street, Suite 200  •  Marietta, GA 30064
Phone: (912) 674-5744  •  Website: www.fountainleasingllc.com

Case 3:20-cv-00145-CLC-HBG   Document 1   Filed 04/07/20   Page 8 of 23   PageID #: 8

**Additional Terms &**
**Conditions:**       1)       This commitment requires the full Guaranties of:

                                Mark Brooks
                                BRI Utility Construction, Inc

              2)       This commitment requires additional collateral in the form of:

                       N/A

**Late Fee / Return Check Fee:** A 5% late fee will be added to the payment if it is not received within the 10-day grace period. In case of a return check during the lease there will be a fee of $100 per occurrence.

Please note that the payments do not include the cost of insuring the equipment or the cost of equipment maintenance. Any and all information provided by your organization will be treated as confidential.

**In addition, this customer affirms that the equipment listed above will be used for business / commercial use.**

Thank you for your time and we look forward to working with you in the near future.

Sincerely,

*ED Wal*

**Ed Walraven**
Vice-President

Agreed and Accepted          *11-24*          , 2018

**Mark Brooks**

*Mark Brooks*

*I reviewed this letter with Mark Brooks at 1:15 PM on 11-26 2018. We reveal it again at 7:30 PM on 11-27 2018.  ED Wal*

# Fountain Leasing, LLC

# LEASE AGREEMENT

| LESSOR: | FOUNTAIN LEASING, LLC<br>8331 E. Walker Springs Ln, Suite 203<br>Knoxville, TN 37923 | Lease No: | 2018 - 1125 |
|---|---|---|---|

| LESSEE: | | | |
|---|---|---|---|
| Contact: Mark Brooks     Phone: (770) 237-8990 | | Supplier: Nasser Heavy Equipment, Inc. | |
| Full Legal Name: BRI Utility Construction, Inc. | | Sales Person: Nasser     Phone: (770) 995-6663 | |
| Street Address: P.O. Box 2025 | | Address: 525 Hurricane Shoals Rd | |
| City: Dacula     St: GA  Zip: 30019 | | City: Lawenceville     St: GA  Zip: 30046 | |

| QUANTITY / ITEM DESCRIPTION | MODEL NO. | SERIAL NO. |
|---|---|---|
| 2007 Caterpillar D6N LGP Crawler Dozer - SN: DJY00166<br>See Exhibit A | | |

EQUIPMENT LOCATION, IF OTHER THAN ABOVE ADDRESS OF APPLICANT-LESSEE

| RENTAL TERMS | | RENTAL PAYMENT AMOUNT | | SECURITY DEPOSIT(s) | |
|---|---|---|---|---|---|
| Rent Commencement Date: | 48 | Payments of | $2,008.37 | Check For This Amount Must Accompany Lease Application | |
| Terms in months from Rent Commencement Date | 48 Mos. | Tax: | $120.50 | $4,627.74 | |
| Rental Payment Period is Monthly Unless Otherwise Indicated | | Total | $2,128.87 | Last  2  Month(s)     payment(s)<br>(Includes Fees, and State and County Taxes as Required) | |

**PERSONAL GUARANTY**

The undersigned guarantors jointly and severally unconditionally guarantee the prompt payment when due of each monthly rental payment due and payable under the foregoing Lease Agreement. To enforce the liability of guarantors hereunder, Lessor shall not be required, first to (a) give guarantors notice of Lessee's default; (b) repossess the equipment; or (c) attempt to enforce the liability of Lessee under the Lease Agreement. Lessor may from time to time accept late payments of rental and may extend the terms of the Lease Agreement without defeating or diminishing this continuing guaranty. This is a guarantee of payment and not of collection.

The Guarantors acknowledge that execution of this guarantee is material part of the consideration upon which Lessor relies in consummating this Lease Agreement and that this guarantee is executed to the Lessor to consummate the Lease Agreement.

By: X _____     X _____     Date X  11-26-18
       Mark Brooks          Signature(s)

1. **LEASE:** Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the unit(s) of machinery, equipment, chattels, or other personal property described in this Lease, described in any schedules attached hereto and incorporated herein and made a part hereof, or described in any addenda subsequently entered into by the parties and incorporated herein by reference, hereafter referred to as the "Equipment", upon the terms and conditions herein set forth in this Lease Agreement. Under this Lease Agreement the term "Rental Commencement Date" Shall be the date that the equipment is delivered to and accepted by Lessee. The term "Commitment Date" shall be the earlier of the date this lease Agreement is executed by Lessee or the date lessee becomes liable for the cost of the equipment. The Term of this lease shall commence on the "Rental Commencement Date", and the first period rental shall be paid on that date. Subsequent monthly rent due during the lease term shall be made on the same date of each successive calendar month. If any rental payment is not received within 10 days of the due date a late charge of no less than 5% of the monthly payment amount shall be assessed. Lessee acknowledges receipt of the first period rent. Lessee agrees to pay the remaining rent at such times and in such amounts as stated above until the total rent shall have been paid in full pursuant to the terms hereof. Any amounts received by Lessor upon execution of this Lease by Lessee in excess of the first period rental and any other sums required to be paid by Lessee shall be held as security for Lessee's faithful performance of the terms of this Lease. The amount of the Security Deposit to be paid by Lessee is specified above. All payments of rent shall be made at the office of Lessor at its address set forth in this Agreement or at such other places as Lessor may designate in writing. Lessee expressly authorizes Lessor to insert in this Lease, and any and all other documents related to this Lease, Agreements or financial statements, information relating to serial numbers, equipment descriptions, costs, and other identification data. Further, Lessee authorizes Lessor to fill in dates called for under the terms of this Lease. All rental payments shall be made punctually on the rental date set forth in this Lease, and all rental payments which fall due on a nonbusiness day or holiday will be due on the next regular business day of Lessor.

2. **RENTALS:** The rental set forth above is an estimate, and shall be adjusted proportionally if Lessor's cost of purchasing and delivering the Equipment to Lessee, including taxes, transportation charges and other charges differs from the estimated cost of such Equipment. Lessee hereby authorizes Lessor to correct the figures and increase or decrease the rental set forth above when Lessor's actual cost for the Equipment is known.

3. **WARRANTIES:** Lessee acknowledges and agrees that neither the supplier nor any salesman or other agent of the supplier is an agent of the Lessor. NO SALESMAN OR AGENT OF SUPPLIER IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE, and no representation as to the equipment or any other matter by the supplier shall in any way affect Lessee's duty to pay the rent and perform its other obligations as set forth herein.

4. **SELECTION OF EQUIPMENT:** LESSEE ACKNOWLEDGES AND AGREES THAT THE EQUIPMENT IS OF A SIZE, DESIGN, CAPACITY AND MANUFACTURE SELECTED BY LESSEE AND LESSEE ACKNOWLEDGES THAT LESSOR IS SPECIFICALLY AUTHORIZED TO ORDER AND PURCHASE THE EQUIPMENT COVERED BY THE TERMS OF THIS LEASE, THAT SUCH PROPERTY IS IN GOOD OPERATING ORDER, REPAIR, CONDITION, AND APPEARANCE, THAT LESSEE IS SATISFIED THAT THE SAME IS SUITABLE FOR ITS PURPOSES. LESSOR IS NOT A MANUFACTURER OF THE EQUIPMENT OR A DEALER IN SIMILAR EQUIPMENT, DOES NOT INSPECT THE EQUIPMENT PRIOR TO DELIVERY TO LESSEE, AND HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATION, WARRANTY OR COVENANT WITH RESPECT TO THE CONDITION, QUALITY, DURABILITY, SUITABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR MERCHANTABILITY OF THE EQUIPMENT IN ANY RESPECT, OR ANY OTHER REP-RESENTATION, WARRANTY OR COVENANT, EXPRESS, OR IMPLIED. LESSOR SHALL NOT BE LIABLE TO LESSEE FOR ANY LIABILITY, LOSS, OR DAMAGE CAUSED OR ALLEGED TO BE CAUSED DIRECTLY OR INDIRECTLY BY THE EQUIPMENT. LESSEE HAS SELECTED THE PROPERTY TO BE LEASED AND IT IS ORDERED BY LESSOR FOR THIS LESSEE AT LESSEE'S ENTIRE RISK AND DISCRETION. IF APPLICABLE, ANY SERVICES OR MAINTENANCE CONTRACTS RELATING TO THE USE AND MAINTENANCE OF THE EQUIPMENT SHALL BE STRICTLY BETWEEN THE LESSEE AND THE PROVIDER OF THOSE SERVICES OR MAINTENANCE, AND LESSOR IS RELIEVED OF ANY RESPONSIBILITY FOR SUCH SERVICE CONTRACTS OR MAINTENANCE CONTRACTS. LESSEE AGREES TO BE RESPONSIBLE FOR ANY REPAIR, ADJUSTMENT, MAINTENANCE, SERVICE, WORN-OUT AND /OR REPLACEMENT PARTS. LESSEE WAIVES ALL RIGHTS TO MAKE CLAIMS AGAINST LESSOR AND LESSOR'S ASSIGNEE FOR BREACH ON ANY WARRANTY OR ANY KIND WHATSOEVER, AND LESSEE LEASES THE EQUIPMENT "AS IS." LESSOR HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATION, WARRANTY OR COVENANT THAT THE EQUIPMENT COVERED BY THE TERMS OF THIS LEASE AGREEMENT COMPLIES WITH ANY GOVERNMENT REGULATIONS OR STANDARDS. There shall be no abatement of the rentals specified within this contract. During the period of any lease hereunder, in which Lessee renders faithful performance of its obligations, Lessor hereby assigns, to the extent assignable to Lessee, any factory or dealer warranty, whether express or implied on the equipment covered by any lease hereunder. Lessor shall have no obligation whatsoever to make any claim on such warranty. Any recovery under such a warranty shall be made payable jointly to Lessee and Lessor. All proceeds of such a warranty recovery shall be used to repair or replace the equipment. Lessor authorizes Lessee to obtain whatever service to the equipment the manufacturer customarily renders provided that such service shall not be at the expense of Lessor.

THIS LEASE CONTAINS ADDITIONAL PROVISIONS SET FORTH ON THE REVERSE SIDE HEREOF, ALL OF WHICH ARE MADE A PART OF THIS LEASE.

| LESSOR: FOUNTAIN LEASING, LLC | DATE X  11-26-2018 |
|---|---|
| | LESSEE: BRI Utility Construction, Inc.<br>(Full Legal Name – Same as Above) |
| SIGNATURE _____ | X _____ |
| TITLE  Vice President | SIGNATURE |
| | TITLE X  President |

# TERMS AND CONDITIONS OF LEASE (CONTINUED)

**5. OWNERSHIP LESSOR.** Each item of the equipment is, and shall at all times remain the sole and exclusive property of the Lessor. Lessee shall have no right, title or interest therein or thereto, except as expressly set forth in the lease. The equipment is, and shall at all times remain personal property notwithstanding its being affixed or attached to real estate in any manner whatsoever. Lessee shall affix and keep plates or decals identifying Lessor as owner of the equipment upon a prominent place on each item of the equipment. Lessee will obtain for the Lessor any and all waivers of right, title, and interest in the equipment under lease from any mortgagee or landlord whatsoever. The only interest Lessee shall have in the equipment is that of lessee under this lease.

**6. USE.** So long as Lessee shall not be in default under this lease, Lessee may possess and use the equipment in accordance with this lease. Lessee shall at all times at its own cost and expense: (a) comply with all the laws, ordinances of regulations relating to the use, operation or maintenance of the equipment; (b) put the equipment only to the use contemplated by the manufacturer; (c) keep and maintain equipment in first class order, repair, condition, and appearance; (d) keep the equipment at the location listed above and not permit the equipment to be removed without prior written consent of the Lessor. Further, during the term of this Agreement Lessee will not allow the subject equipment to be serviced or maintained by other than an authorized manufacturer, manufacturer's representative, or service agent.

**7. LICENSING, REGISTRATION, AND TAXES.** Lessee shall obtain such licensing and registration of the equipment as is required by law. AS additional rent, Lessee shall pay and discharge when due all license and registration fees, assessments, sales, use, property, excise, ad valorem, and all other taxes, governmental charges, and fees (excluding any tax measured by Lessor's net income) together with any penalties, fines, or interests applicable thereto, now or hereafter imposed by any state, federal, or local government upon or relating to the equipment or the use, registration, rental, shipment, transportation, delivery, or operation thereof, whether the same be payable by or assessed to Lessor or Lessee.

**8. LESSOR'S INSPECTION.** Lessor shall have the right, during normal business hours, to enter the premises where the equipment may be located for the purpose of inspecting and examining the equipment to insure compliance by Lessee, with its obligations under this Lease. Lessee shall immediately notify Lessor of any accident connected with the malfunctioning or operation of the equipment including in such report, the time, place and nature of the accident, damage caused to property, the names and addresses of persons injured, and of witnesses and such other information as may be pertinent to Lessor's investigation of such accident. Lessee shall notify Lessor immediately of any attachment or other judicial process affecting any item of equipment leased under the terms of this Agreement.

**9. INDEMNITY.** Lessee assumes all risk and liability and shall indemnify Lessor from and against any and all claims, actions, suits, proceedings, costs, expenses, damages, and liabilities, including reasonable attorney's fees resulting from the use, operation, or storage of the equipment and for injuries or death to persons or damage to property arising there from, regardless of the manner in which or to whom or to what property the injury or damage occurs. Lessee further indemnifies Lessor, its successors, assigns and agents from any and all claims, actions, damages, liabilities, and expenses including reasonable attorney's fees, arising out of the equipment, including without limitation, the manufacturer, selection delivery, possession, use, operation or return of the equipment. Lessee will not assert against Lessor any claim arising from a breach of warranty by an equipment vendor or manufacturer. Further, Lessee will make no claim against Lessor for loss of anticipatory profits or other consequential, direct or indirect damages. Lessee agrees to indemnify Lessor against: all claims or trademark, patent, or copyright infringement.

**10. ASSIGNMENT BY LESSEE.** Lessee shall not assign , pledge, or hypothecate any lease hereunder, nor shall Lessee sublet or lend the equipment or any part thereof without the prior written consent of Lessor. It is anticipated that no assignment or assignments will be approved by Lessor.

**11. ASSIGNMENT BY LESSOR.** Lessor may assign, pledge, or in any other way transfer any lease hereunder either in whole or in part, without recourse to the Lessee.

**12. LOSS AND DAMAGE.** LESSEE ASSUMES ALL RISK OF LOSS OR DAMAGE TO THE EQUIPMENT FROM ANY AND EVERY CAUSE WHATSOEVER, WHETHER OR NOT SUCH LOSS OR DAMAGE IS COVERED BY INSURANCE OR THE EQUIPMENT. No loss or damage to the equipment or any part thereof shall relieve Lessee of any obligation under any lease hereunder. In the event of loss or damage, Lessor shall have the option to require Lessee to: (a) repair or restore the equipment to good condition and working order, or (b) replace the equipment with similar equipment in good repair, condition or working order with clear title thereto in the name of Lessor or (c) pay Lessor in cash the "stipulated loss value", which is defined as the greater of: (1) the then current value of such equipment immediately prior to the loss or damage as determined by the Lessor, or (2) the then unpaid balance of rentals for the rent term applicable to such equipment plus a reasonable residual value. Upon payment of the stipulated loss value, any lease hereunder shall terminate only with respect to the item of equipment for which Lessee has paid, and Lessee shall become entitled to said equipment in its then existing condition without any warranty of Lessor.

**13. INSURANCE.** Lessee, at its own expense, shall keep equipment insured against all risk of loss or damage from every cause whatsoever, for not less than the replacement cost, when new of said leased equipment without consideration for depreciation and shall carry public liability insurance, both personal injury, and property damage covering the equipment and LESSEE SHALL BE LIABLE FOR ANY LOSS NOT COVERED BY INSURANCE. All said insurance shall be in form and amount with companies satisfactory to Lessor. All insurance for loss or damage shall provide the Lessor is a loss payee and that losses, if any, shall be payable to Lessor; and all such liability insurance shall include Lessor as named insured. The proceeds of any public liability or property damage insurance shall be payable first to Lessor's ability, if any, the balance, payable to Lessee. The proceeds of any theft, fire, extended coverage, collision, or other insurance providing coverage of risks of loss to owners of interest in the property subject to any lease hereunder, shall be payable solely to Lessor and shall be applied by Lessor toward payment of the obligations of the Lessee under paragraph 12 hereof, the balance, if any, of the proceeds to be the property of Lessor. Lessee shall pay the premiums therefore, and deliver to Lessor, policies of insurance or duplicates thereof or other evidence satisfactory to Lessor of insurance coverage. Each insurer shall agree by endorsement upon the policy or policies issued by it, or by independent instrument furnished to Lessor, that it will give Lessor 30 days prior written notice to the effective date of any alteration or cancellation of such policy. Lessee hereby irrevocably appoints Lessor as Lessee's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any said insurance policy. In case of the failure of Lessee to procure or maintain said insurance effective on the date of shipment of the equipment, Lessor shall have the right, but shall not be obligated to, provide such insurance or obtain compliance on behalf of Lessee. In that event, all monies spent by and expenses of Lessor effecting such insurance or compliance, shall be deemed to be additional rent and shall become due and owed forthwith and Lessee pay the same with the monthly payment of rent next due after receipt of notice from Lessor.

**14. SURRENDER.** Upon the expiration or early termination of any lease hereunder, lessee shall return each item of equipment to Lessor, free of all advertising or insignia placed thereon by Lessee, in good condition, repair or working order, ordinary wear and tear excepted. The equipment shall be surrendered by Lessee at its sole cost and expense, either: (a) By delivering the equipment to any location selected by Lessor within the country in which equipment was delivered to Lessee or within the country to which the equipment was moved with Lessee's consent or, (b) By delivering same as directed by Lessor; freight collected. If, upon termination of this Agreement, for any reason, Lessee fails or refuses to surrender the equipment without legal process and without liability or suit, action, or other proceeding by the lessee, and remove the same. Lessee hereby releases any claim or right of action of trespass or damages caused by reason of such entry and removal.

Lessee shall have no option to purchase or otherwise acquire title to or ownership of any of the equipment and shall have only the right to use the same under the terms and provisions of this lease, provided, however, that if the Lessee has paid in full all rentals owing hereunder and is not then in default hereunder; and if the blank space after "Purchase Price" below has not been filled in, then Lessee shall have the option upon giving Lessor 30 days prior written notice to Lessor to purchase said equipment, AS AND WHERE IS, without any warranty whatsoever on the part of the Lessor, upon payment of the Purchase Price. The Purchase Price shall be _____.

**15. DEFAULT.** If the Lessee defaults in the payment of any sum of money to be paid under any lease hereunder, and such default continues for a period of 5 days after the date on which the same shall become due and payable, or if Lessee fails to observe or perform any covenant, condition, or obligation, required to be performed by Lessee under any lease hereunder, and Lessee has not taken steps to remedy such default within 5 days after the occurrence of such default, or if lessee or any guarantor of Lessee's obligations commences any act of bankruptcy, or any proceeding under any bankruptcy act or insolvency law is commenced by or against the Lessee, or if any attachment or execution is levied on any item of equipment and is not discharged within 5 days thereafter, or if a receiver or trustee is appointed to take possession of any item of equipment leased hereunder, or if the condition of Lessee's affairs or the affairs of any guarantor of Lessee's obligations change so as to in the Lessor's opinion materially impair the Lessor's security or interest risk involved, or if Lessee defaults on any other Lease Agreement entered into by and between Lessee and Lessor or any other obligation for payment or borrowed money, or if any warranty, representation, or statement made or furnished by lessee or any guarantor of Lessee's obligations for or on behalf of Lessee proves to be false or misleading in any material respect when made or furnished, or if there is an occurrence of loss, theft, substantial damage or destruction attempted sale by the Lessee, subletting, or partial possession, loss by reason of misleading in any material representation or warranty in the Agreement by Lessee, or any assignment of the equipment covered by the terms of this lease for the benefit of Lessee's creditors, then: Lessor, at its option, may exercise one or more of the following remedies with respect to any leases hereunder (a) declare the remaining unpaid installments of rent at once due and payable or (b) terminate this Lease and, with or without legal process, enter in or upon Lessee's premises and remove said property with or without notice to Lessee, and subsequently sue for damages suffered from the breach by Lessee, and Lessee hereby releases any claim or right of action for trespass or damages caused by reason of such entry or removal, or (c) terminate this Lease and, with or without legal process, enter in or upon Lessee's premises and remove said property with or without notice to Lessee and sell or lease the property at such price as Lessor determines is reasonable and apply the proceeds of the sale or lease first to the expense of the sale or lease, including reasonable attorney's fees, and second to the total unpaid rental due for the term of this Lease and Lessee shall pay deficiency or (d) Lessor may require Lessee to assemble the equipment and make it available to Lessor upon Lessor's request, or (e) Lessor may sell or lease the equipment at public or private sale or release without Lessee's permission, or (f) Lessor may recover monetary damages, or (g) Lessor may use Lessee's place of business for purposes of displaying and selling the equipment covered by the terms of this Agreement at no cost to Lessor, or (h) pursue any fees for enforcing any part of this Lease. LESSEE ACKNOWLEDGES AND FULLY UNDERSTANDS THAT LESSEE MAY HAVE THE LEGAL RIGHT TO AN OPPORTUNITY FOR A HEARING PRIOR TO REPOSSESSION OF THE EQUIPMENT DESCRIBED IN THIS AGREEMENT AND ANY SUBSEQUENT SCHEDULES, AMENDMENTS, OR ENDORSEMENTS HERETO IN THE EVENT OF LESSEE'S DEFAULT UNDER THE TERMS AND CONDITIONS OF THIS AGREEMENT, WITH FULL KNOWLEDGE OF THIS RIGHT, LESSEE IS, BY EXECUTING THIS EQUIPMENT LEASE AGREEMENT HEREBY WAIVES THE SAME.

**16. LESSEE'S INSPECTION.** Lessee shall inspect the equipment within five (5) business days after its arrival. Unless within five business days, Lessee gives written notice to Lessor specifying any defect in or other proper objection to the equipment, Lessee agrees that it shall be conclusively presumed as between Lessor and Lessee, that Lessee has fully inspected the equipment, and that the equipment is in full compliance with the terms of this lease, and in good condition and repair, and that Lessee is satisfied with and has accepted the equipment. In case Lessee gives such written notice with respect to any item of the equipment, Lessee shall, on demand by Lessor, pay Lessor any amounts theretofore paid or owing by Lessor in respect to the purchase of such item of equipment and upon such payment Lessee shall be subrogated to Lessor's claim, if any, against the manufacturer or supplier thereof.

**17. ATTORNEY'S FEES.** In the event of any action at law or suit in equity in relation to this lease, Lessee, in addition to all other sums which Lessee may be called upon to pay, will pay to Lessor a reasonable sum for its attorney's fees.

**18. HOLDING OVER.** Any use of equipment by Lessee beyond the terms of any lease hereunder shall be deemed an extension of the original lease on a month-to-month basis and all obligations of Lessee shall continue during such holding over. During any such holding over, Lessee may terminate such lease and take possession of the equipment upon demand after thirty (30) days written notice to Lessor.

**19. NON WAIVER.** No waiver of any of Lessee's obligations, conditions, or covenants shall be deemed to take place except such waiver that may be in writing and signed by Lessor.

**20. APPLICABLE LAW.** This equipment Lease Agreement shall be of no force and effect until accepted in writing by an officer of Lessor at Knoxville, Tennessee. This contract to be governed by and construed according to the laws of the State of Tennessee. In the event any dispute arising under the terms of this Agreement shall require litigation, the proper and sole forum for such litigation shall be the courts of law or equity in Knox County, Tennessee.

**21. BOOKS AND RECORDS.** Lessee shall keep books and records in accordance with good accounting practice and shall deliver to Lessor balance sheets, profit and loss statements and any other financial information in such form and at such times as Lessor may require.

**22. NATURE OF TRANSACTION.** Lessor makes no representation, express or implied, concerning the legal or accounting character of the transaction evidenced hereby for tax or other purposes. Lessee is advised to consult with tax counsel or other professional for that purpose.

**23. NOTICES.** All notices required or permitted under any lease hereunder shall be sufficient if delivered personally or mailed to party at the address set forth herein. Any such notice shall be effective 48 hours after it has been deposited in the United States mail, duly addressed and postage prepaid.

**24. SECURITY DEPOSIT.** The amount of the security deposit paid by Lessee is stated on the front page of this Lease Agreement. This security deposit is paid by Lessee to secure Lessee's covenants under the terms of this Lease. The parties agree that said deposit will not bear interest and may be commingled with other funds of Lessor. Further, in the event of any default under the terms of this Agreement said security deposit, at Lessor's option and total discretion, may be applied to satisfy any obligation of Lessee which may be in default under the terms of this Agreement. The payment of this security deposit and its commingling does not excuse in any way Lessee from any obligations under the terms of this Agreement.

**25. FURTHER ASSURANCE.** Lessee shall execute and deliver to Lessor, upon Lessee's request, such instruments and assurances as Lessor deems necessary or advisable for the confirmation or perfection of this lease and Lessor's rights hereunder. Where so provided by law, Lessee agrees to execute and file evidence of its ownership in said equipment.

**26. LEASE IRREVOCABLE.** This lease is irrevocable for the full term hereof and the rent shall not abate by any reason of termination of Lessee's right of possession and/or the taking of possession by the Lessor or any other reason.

**27. ENTIRE AGREEMENT.** This instrument constitutes the entire agreement between parties. No employee or agent is authorized to bind or modify any term hereof.

**28. OFFSET.** Lessee hereby waives any existing or future claims for offset against rent or any other payments which Lessee is obligated to pay to Lessor under the terms of this Lease Agreement.

**29. UCC FILINGS.** Lessor and Lessee agree that a copy or reproduction of this lease may be filed as a financing statement and shall be sufficient as a financing statement under the Uniform Commercial Code. Lessee shall execute or obtain and deliver to Lessor, upon Lessor's request, such instruments, financing statements and assurances, including without limitation, waivers of interest of owners or mortgagees or real estate upon which the equipment is located, as Lessor deems necessary or advisable for the confirmation, protection or perfection of the Lease and Lessor's rights hereunder and will pay all costs incident thereto. Lessor may file or record a financing statement related to this Lease at any time.

**30. LESSEE REPRESENTS AND WARRANTS THAT IT HAS THE FULL POWER, AUTHORITY AND LEGAL RIGHT TO ENTER INTO AND PERFORM THIS LEASE AND ANY EXHIBITS OR SCHEDULES HERETO, THAT IT WILL SUPPLY LESSOR WITH PROOF THAT ALL REQUISITE CORPORATE ACTION (IF LESSEE IS A CORPORATION) HAS BEEN TAKEN, THAT THE EXECUTION OF THIS LEASE, ANY EXHIBIT OR ANY SCHEDULE, DOES NOT CONTRAVENE ANY AGREEMENT TO WHICH LESSEE IS A PARTY (INCLUDING ITS ARTICLES OF INCORPORATION OR BY-LAWS IF LESSEE IS A CORPORATION), AND THAT NO MORTGAGE DEED OF TRUST, CHARTER, LEASE OR OTHER LIEN OF SECURITY INTEREST OF ANY TYPE WHICH NOW COVERS OR AFFECTS ANY PROPERTY OR INTEREST OF LESSEE, WILL ATTACH TO THE EQUIPMENT.**

Case 3:20-cv-00145-CLC-HBG    Document 1    Filed 04/07/20    Page 11 of 23    PageID #: 11



**Fountain Leasing, LLC**

July 18, 2018

Mark Brooks
BRI Utility Construction, Inc
Post Office Box 2025
Dacula, GA 30019

Dear Mr. Brooks:

I am pleased to offer the following commitment of lease financing on the following piece of equipment: 2012 John Deere 350G Excavator. The terms and conditions of this commitment are as follows:

| | |
|---|---|
| **Lessee:** | BRI Utility Construction, Inc |
| **Equipment:** | 2012 John Deere 350G Excavator |
| **Lease Amount:** | $95,000 |
| **Term:** | 48-Months |
| **Payments:** | $ 2,592.86 per month including tax |
| **Purchase Option:** | At the end of the lease the buyout is $1.00. |
| **Advance Payment:** | This commitment requires two advance payments plus doc fees. See breakdown: |

| | | |
|---|---|---:|
| Advance Payment | $ | 4,892.18 |
| Tax | $ | 293.53 |
| UCC Fee | $ | 20.00 |
| Doc Fees | $ | 350.00 |
| **Total:** | $ | **5,555.72** |

Fountain Leasing, LLC • 366 Powder Springs Street, Suite 200 • Marietta, GA 30064
Phone: (912) 874-5744 • Website: www.fountainleasingllc.com

Case 3:20-cv-00145-CLC-HBG   Document 1   Filed 04/07/20   Page 12 of 23   PageID #: 12

**Additional Terms &
Conditions:** This commitment requires the full Guaranties of:

1) Mark Brooks
2) BRI Utility Construction, Inc

**Late Fee / Return Check Fee:** A 5% late fee will be added to the payment if it is not received within the 10-day grace period. In case of a return check during the lease there will be a fee of $100 per occurrence.

Please note that the payments do not include the cost of insuring the equipment or the cost of equipment maintenance. Any and all information provided by your organization will be treated as confidential.

**In addition, this customer affirms that the equipment listed above will be used for business / commercial use.**

Thank you for your time and we look forward to working with you in the near future.

Sincerely,

**Ed Walraven**
Vice-President

Agreed and Accepted  7-23-18, 2018

**Mark Brooks**

*I reviewed this letter with Mark Brooks at 8.30AM on 7-23-2018.*

*ED Wale*

# Fountain Leasing, LLC

# LEASE AGREEMENT

| | |
|---|---|
| **LESSOR:** FOUNTAIN LEASING, LLC<br>8331 E. Walker Springs Ln, Suite 203<br>Knoxville, TN 37923 | Lease No: **2018-0718** |

| **LESSEE:** | | |
|---|---|---|
| Contact: **Mark Brooks** | Phone: **(770) 237-8990** | |
| Full Legal Name: **BRI Utility Construction, Inc.** | | |
| Street Address: **P.O. Box 2025** | | |
| City: **Dacula** | St: **GA** Zip: **30019** | |

| **Supplier:** **Nasser Heavy Equipment, Inc.** | | |
|---|---|---|
| Sales Person: **Nasser** | Phone: **(770) 995-6663** |
| Address: **525 Hurricane Shoals Rd** | |
| City: **Lawenceville** | St: **GA** Zip: **30046** |

| QUANTITY/ ITEM DESCRIPTION | MODEL NO. | SERIAL NO. |
|---|---|---|
| **2012 John Deere 350G Excavator - SN: 808533** | | |
| **See Exhibit A** | | |

EQUIPMENT LOCATION, IF OTHER THAN ABOVE ADDRESS OF APPLICANT-LESSEE

| RENTAL TERMS | RENTAL PAYMENT AMOUNT | | SECURITY DEPOSIT(s) |
|---|---|---|---|
| Rent Commencement Date: **48** | Payments of | **$2,446.09** | Check For This Amount Must Accompany Lease Application |
| Terms in months from Rent Commencement Date **48** Mos. | Tax: | **$146.77** | **$5,555.72** |
| Rental Payment Period is Monthly Unless Otherwise Indicated | Total: | **$2,592.86** | Last **2** Month(s) payment(s)<br>(Includes Fees, and State and County Taxes as Required) |

## PERSONAL GUARANTY

The undersigned guarantors jointly and severally unconditionally guarantee the prompt payment when due of each monthly rental payment due and payable under the foregoing Lease Agreement. To enforce the liability of guarantors hereunder, Lessor shall not be required, first to (a) give guarantors notice of Lessee's default; (b) repossess the equipment; or (c) attempt to enforce the liability of Lessee under the Lease Agreement. Lessor may from time to time accept late payments of rental and may extend the terms of this Lease Agreement without defeating or diminishing this continuing guaranty. This is a guarantee of payment and not of collection.

The Guarantors acknowledge their execution of this guarantee is a material part of the consideration upon which Lessor relies in consummating this Lease Agreement and that this guarantee is executed to the Lessor to consummate the Lease Agreement.

By X _(signature)_    X _____    Date X **7-23-2018**

Mark Brooks      Signature(s)

**1. LEASE:** Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the unit(s) of machinery, equipment, chattels, or other personal property described in this Lease, described in any schedules attached hereto and incorporated herein and made a part hereof, or described in any addenda subsequently entered into by the parties and incorporated herein by reference, hereafter referred to as the "Equipment", upon the terms and conditions herein set forth in this Lease Agreement. Under this Lease Agreement the term "Rental Commencement Date" Shall be the date that the equipment is delivered to Lessee. The term "Commitment Date" shall be the earlier of the date this Lease Agreement is executed by Lessee or the date lessor becomes liable for the cost of the equipment. The Term of this lease shall commence on the "Rental Commencement Date", and the first period rental shall be paid on that date. Subsequent monthly rent due during the lease term shall be made on the same date of each successive calendar month. If any rental payment is not received within 10 days of the due date a late charge of no less than 5% of the monthly payment amount shall be assessed.

Lessee acknowledges receipt of the first period rent. Lessee agrees to pay the remaining rent at such times and in such amounts as stated above until the total rent shall have been paid in full pursuant to the terms hereof. Any amounts received by Lessor upon execution of this Lease by Lessee in excess of the first period rental and any other sums required to be paid by Lessee shall be held as security for Lessee's faithful performance of the terms of this Lease. The amount of the Security Deposit to be paid by Lessee is specified above. All payments of rent shall be made at the office of Lessor at its address set forth in this Agreement or at such other places as Lessor may designate in writing. Lessee specifically authorizes Lessor to insert in this Lease, and any and all other documents related to this Lease, Agreements or financial statements, information relating to serial numbers, equipment descriptions, costs, and other identification data. Further; Lessee authorizes Lessor to fill in dates called for under the terms of this Lease. All rental payments shall be made punctually on the rental date set forth in this Lease, and all rental payments which fall due on a nonbusiness day or holiday will be due on the next regular business day of Lessor.

**2. RENTALS:** The rental set forth above is an estimate, and shall be adjusted proportionally if Lessor's cost of purchasing and delivering the Equipment to Lessee, including taxes, transportation charges and other charges differs from the estimated cost of such Equipment. Lessee hereby authorizes Lessor to correct the figures and increase or decrease the rental set forth above when Lessor's actual cost for the Equipment is known.

**3. WARRANTIES:** Lessee acknowledges and agrees that neither the supplier nor any salesman or other agent of the supplier is an agent of the Lessor. NO SALESMAN OR AGENT OF SUPPLIER IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE, and no representation as to the equipment or any other matter by the supplier shall in any way affect Lessee's duty to pay the rent and perform its other obligations as set forth herein.

**4. SELECTION OF EQUIPMENT:** LESSEE ACKNOWLEDGES AND AGREES THAT THE EQUIPMENT IS OF A SIZE, DESIGN, CAPACITY AND MANUFACTURE SELECTED BY LESSEE AND LESSEE ACKNOWLEDGES THAT LESSOR IS SPECIFICALLY AUTHORIZED TO ORDER AND PURCHASE THE EQUIPMENT COVERED BY THE TERMS OF THIS LEASE; THAT SUCH PROPERTY IS IN GOOD OPERATING ORDER, REPAIR, CONDITION, AND APPEARANCE; THAT LESSEE IS SATISFIED THAT THE SAME IS SUITABLE FOR ITS PURPOSES. LESSOR IS NOT A MANUFACTURER OF THE EQUIPMENT OR A DEALER IN SIMILAR EQUIPMENT, DOES NOT INSPECT THE EQUIPMENT PRIOR TO DELIVERY TO LESSEE, AND HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATION, WARRANTY OR COVENANT WITH RESPECT TO THE CONDITION, QUALITY, DURABILITY, SUITABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR MERCHANTABILITY OF THE EQUIPMENT OR OF ANY OTHER REPRESENTATION, WARRANTY OR COVENANT, EXPRESS, OR IMPLIED. LESSOR SHALL NOT BE LIABLE TO LESSEE FOR ANY LIABILITY, LOSS, OR DAMAGE CAUSED OR ALLEGED TO BE CAUSED DIRECTLY OR INDIRECTLY BY THE EQUIPMENT. LESSEE HAS SELECTED THE PROPERTY TO BE LEASED AND IT IS ORDERED BY LESSOR FOR THIS LESSEE AT LESSEE'S ENTIRE RISK AND DISCRETION. IF APPLICABLE, ANY SERVICES OR MAINTENANCE CONTRACTS RELATING TO THE USE AND MAINTENANCE OF THE EQUIPMENT SHALL BE STRICTLY BETWEEN THE LESSEE AND THE PROVIDER OF THOSE SERVICES OR MAINTENANCE, AND LESSOR IS RELIEVED OF ANY RESPONSIBILITY FOR SUCH SERVICE CONTRACTS OR MAINTENANCE CONTRACTS. LESSEE AGREES TO BE RESPONSIBLE FOR ANY REPAIR, ADJUSTMENT, MAINTENANCE, SERVICE, WORN-OUT AND /OR REPLACEMENT PARTS. LESSEE WAIVES ALL RIGHTS TO MAKE CLAIMS AGAINST LESSOR AND LESSOR'S ASSIGNEE FOR BREACH ON ANY WARRANTY OF ANY KIND WHATSOEVER; AND LESSEE LEASES THE EQUIPMENT "AS IS". LESSOR HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATION, WARRANTY OR COVENANT THAT THE EQUIPMENT COVERED BY THIS LEASE AGREEMENT COMPLIES WITH ANY GOVERNMENT REGULATIONS OR STANDARDS. There shall be no abatement of the rentals specified within this contract. During the period of any lease hereunder, in which Lessee renders faithful performance of its obligations, Lessor hereby assigns, to Lessee, any factory or dealer warranty, whether express or implied on the equipment covered by any lease hereunder. Lessor shall have no obligation whatsoever to make any claim on such warranty. Any recovery under such a warranty shall be made payable jointly to Lessee and Lessor. All proceeds of such a warranty recovery shall be used to repair or replace the equipment. Lessor authorizes Lessee to obtain whatever service to the equipment the manufacturer customarily renders provided that such service shall not be at the expense of Lessor.

THIS LEASE CONTAINS ADDITIONAL PROVISIONS SET FORTH ON THE REVERSE SIDE HEREOF, ALL OF WHICH ARE MADE A PART OF THIS LEASE.

| LESSOR: **FOUNTAIN LEASING, LLC** | DATE X **9-23-2018** | LESSEE: **BRI Utility Construction, Inc.** |
|---|---|---|
| SIGNATURE _(signature)_ | | _(Full legal Name — Same as Above)_ |
| TITLE **VICE President** | | X _(signature)_ |
| | | SIGNATURE |
| | | TITLE x **Pres** |

**5. OWNERSHIP LESSOR.** Each item of the equipment lease her — shall at all times remain the sole and exclusive property of the Lessor, and — shall have no right, title or interest therein or thereto, except as expressly set forth in the lease. The equipment, is and shall at all times remain personal pr — , not withstanding its being fixed or attached to real estate in any manner wha — . Lessee shall affix and keep plates or decals identifying Lessor as owner of equipment upon a prominent place on each item of the equipment. Lessee shall obtain for the Lessor any and all waivers of right, title, and interest in the equipment under lease from any mortgagee or landlord whatsoever. The only interest which Lessee shall have in the equipment is that of lessee under this lease.

**6. USE.** So long as lessee shall not be in default under this lease, Lessee may possess and use the equipment in accordance with this lease. Lessee shall at all times at its own cost and expense: (a) comply with all the laws, ordinances or regulations relating to the use, operation or maintenance of the equipment; (b) put the equipment only to the use contemplated by the manufacturer; (c) keep and maintain equipment in first class order, repair, condition, and appearance; (d) keep the equipment at the location listed above and not permit the equipment to be removed without prior written consent of the Lessor. Further, during the term of this Agreement Lessee will not allow the subject equipment to be services or — maintained by other than an authorized manufacturer, manufacturer's representative, or service agent.

**7. LICENSING, REGISTRATION, AND TAXES.** Lessee shall obtain such licensing and registration of the equipment as is required by law. As additional rent, Lessee shall pay and discharge when due all license and registration fees, assessments, sales, use, property, excise, ad valorem, and all other taxes, governmental charges, and fees (excluding any tax measured by Lessor's net income) together with any penalties, fines, or interests applicable thereto, now or hereafter imposed by any state, federal, or local government upon or relating to the equipment or the use, registration, rental, shipment, transportation, delivery, or operation thereof, whether the same be payable by or assessed to Lessor or Lessee.

**8. LESSOR'S INSPECTION.** Lessor shall have the right, during normal business hours, to enter the premises where the equipment may be located for the purpose of inspecting and examining the equipment to insure compliance by Lessee, with its obligations under this Lease. Lessee shall immediately notify Lessor of any accident connected with the malfunctioning or operation of the equipment including in such report, the time, place and nature of the accident, damage caused to property, the names and addresses of persons injured, and of witnesses and such other information as may be relevant to Lessor's investigation of such accident. Lessee shall notify Lessor immediately of any attachment or other judicial process affecting any item of equipment leased under the terms of this Agreement.

**9. INDEMNITY.** Lessee assumes all risk and liability and shall indemnify Lessor from and against any and all claims, actions, suits, proceedings, costs, expenses, damages, and liabilities, including reasonable attorney's fees resulting from the use, operation, or storage of the equipment and for injuries or death to persons or damage to property arising there from, regardless of the manner in which or to whom or to what property the injury or damage occurs. Lessee further indemnifies Lessor, its successors, assigns, and agents from any and all claims, actions, damages, liabilities, and expenses including reasonable attorney's fees, arising out of the equipment, including without limitation, the manufacture, selection delivery, possession, use, operation or return of the equipment. Lessee will not assert against Lessor any claim arising from a breach of warranty by an equipment vendor or manufacturer. Further, Lessee will make no claim against Lessor for loss of anticipatory profits or other consequential, direct or indirect damages. Lessee agrees to indemnify Lessor against all claims or trademark, patent, or copyright infringement.

**10. ASSIGNMENT BY LESSEE.** Lessee shall not assign, pledge, or in any other way transfer any lease hereunder either in whole or in part, without notice to the Lessee.

**11. ASSIGNMENT BY LESSOR.** Lessor may assign, pledge, or in any other way transfer any lease hereunder either in whole or in part, without notice to the Lessee.

**12. LOSS AND DAMAGE.** Lessee ASSUMES ALL RISK OF LOSS OR DAMAGE TO THE EQUIPMENT FROM ANY AND EVERY CAUSE WHATSOEVER, WHETHER OR NOT SUCH LOSS OR DAMAGE IS COVERED BY INSURANCE ON THE EQUIPMENT. No loss or damage to the equipment or to any part thereof shall relieve Lessee of any obligation under any lease hereunder. In the event of loss or damage, Lessor shall have the option to require Lessee to: (a) repair or restore the equipment to good condition and working order, or (b) replace the equipment with similar equipment in good repair, condition or working order with clear title thereto in the name of Lessor or (c) pay Lessor in cash the "stipulated loss value", which is defined as the greater of: (1) the then current value of such equipment immediately prior to the loss or damage as determined by the Lessor, or (2) the then unpaid balance of rentals for the rent term applicable to such equipment plus a reasonable residual value. Upon payment of the stipulated loss value, any lease hereunder shall terminate only with respect to the item of equipment for which Lessee has paid, and Lessee shall become entitled to said equipment in its then existing condition without any warranty of Lessor.

**13. INSURANCE.** Lessee, at its own expense, shall keep equipment insured against all risk of loss or damage from every cause whatsoever, for not less than the replacement cost when new of said leased equipment without consideration for depreciation and shall carry public liability insurance, both personal injury, and property damage covering the equipment, and LESSEE SHALL BE LIABLE FOR ANY LOSS NOT COVERED BY INSURANCE. All said insurance shall be in form and amount with companies satisfactory to Lessor. All insurance for loss or damage shall provide that Lessor is a loss payee and that losses, if any, shall be payable to Lessor; and all such liability insurance shall include Lessor as named insured. The proceeds of any public liability or property damage insurance shall be payable first to the Lessor, to the extent of Lessor's ability, if any, the balance, payable to Lessee. The proceeds of any theft, fire, extended coverage, collision, or other insurance providing coverage of risks of loss to owners of interest in the property subject to any lease hereunder, shall be payable solely to Lessor and shall be applied by Lessor toward payment of the obligations of the Lessee under paragraph 12hereof, the balance, if any, of the proceeds to be the property of Lessor. Lessee shall pay the premiums therefore, and deliver to Lessor, policies of insurance or duplicates thereof or other evidence satisfactory to Lessor of insurance coverage. Each insurer shall agree by endorsement upon the policy or policies issued by it, or by independent instrument furnished to Lessor, that it will give Lessor 30 days prior written notice to the effective date of any alteration or cancellation of such policy. Lessee hereby irrevocably appoints Lessor as Lessee's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any said insurance policy. In case of the failure of Lessee to procure or maintain said insurance effective on the date of shipment of the equipment, Lessor shall have the right, but shall not be obligated, to effect such insurance or compliance on behalf of Lessee. In that event, all monies spent by and expenses of Lessor effecting such insurance or compliance, shall be deemed to be additional rent and shall become due and owed forthwith and Lessee pay the same with the monthly payment of rent next due after receipt of notice from Lessor.

**14. SURRENDER.** Upon the expiration or early termination of any lease hereunder, lessee shall return each item of equipment to Lessor, free of all advertising or insignia placed thereon by Lessee, in good condition, repair or working order, ordinary wear and tear excepted. The equipment shall be surrendered by Lessee at its sole cost and expense, either: (a) By delivering the equipment to any location selected by Lessor within the country in which equipment was delivered to Lessee or within the country to which the equipment was moved with Lessor's consent, or, (b) By delivering same as directed by Lessor, freight collected. If, upon termination of this Agreement, for any reason, Lessee fails or refuses to return equipment to Lessor as herein provided, Lessor, or Lessor's agents or assigns, shall have the right without notice or demand to enter Lessee's premises or where the equipment may be found, forcibly if necessary, and take possession of and remove the equipment without legal process and without liability or suit, action, or other proceeding by the lessee, and remove the same. Lessee hereby releases any claim or right of action of trespass or damages caused by reason of such entry and removal.

Lessee shall have no option to purchase or otherwise acquire title to or ownership of any of the equipment and shall have only the right to use the same under the terms and provisions of this lease; provided, however, that if the Lessee has paid in full all rentals owing hereunder and is not then in default hereunder, and if the blank space after "Purchase Price" below has been filled in, then Lessee shall have the option of purchasing — 's prior written notice to Lessor to purchase said equipment, AS AND WHERE IS, without any warranty whatsoever on the part of the Lessor, upon payment of the Purchase Price. The Purchase Price shall be ___ .

**15. DEFAULT.** If the Lessee defaults in the payment of any sum of money to be paid under any lease hereunder, and such default continues for a period of 5 days after the date on which the same shall become due and payable, or if Lessee fails to observe or perform any covenant, condition, or obligation, required to be performed by Lessee under any lease hereunder, and Lessee has not taken steps to remedy such default within 5 days after the occurrence of such default, or if lessee or any guarantor of Lessee's obligations commence any act of bankruptcy, or any proceeding under any bankruptcy act or insolvency law is commenced by or against the Lessee, or if a writ of attachment or execution is levied on any item of equipment and is not discharged within 5 days thereafter, or if Lessee or trustee is appointed to take possession of any item of equipment leased hereunder, or if the condition of Lessee's affairs or the affairs of any guarantor of Lessee's obligations change so as to in the Lessor's opinion materially impair the Lessor's security or increase the credit risk involved, or if Lessee defaults on any other Lease Agreement entered into by and between Lessee and Lessor or any other obligation for payment or borrowed money, or if any warranty, representation, or statement made or furnished by lessee or any guarantor of Lessee's obligations for or on behalf of Lessee proves to be false or misleading in any material respect when made or furnished, or if there is an occurrence of loss, theft, substantial damage or destruction attempted sale by the Lessee, subletting, or partial possession with any or all of the equipment by Lessee, or any breach of representation or warranty in the Agreement by Lessee, or any assignment of the equipment covered by the terms of this lease for the benefit of Lessee's creditors, then Lessor, at its option, may exercise one or more of the following remedies with respect to any lease hereunder (i) declare the remaining unpaid installments of rent at once due and payable or (b) terminate this Lease and, with or without legal process, enter in or upon Lessee's premises and remove said property with or without notice to Lessee, and subsequently sue for damages suffered from the breach by Lessee, and Lessee hereby releases any claim or right of action for trespass or damages caused by reason of such entry or removal, or (c) terminate the Lease and, with or without legal process, enter in or upon Lessee's premises and remove said property with or without notice to Lessee and sell or lease the property at such price as Lessor determines is reasonable and apply the proceeds of the sale or lease first to the expense of the sale or lease, including reasonable attorney's fees, second to the total unpaid rental due for the term of this Lease and Lessee shall pay Lessor any deficiency or (d) Lessor may require Lessee to assemble the equipment and make it available to Lessor upon Lessor's request, or (e) Lessor may sell or lease the equipment at public or private sale or relesse without Lessee's permission, or (f) Lessor may recover monetary damages, or (g) Lessor may use Lessee's place of business for purposes of displaying and selling the equipment covered by the terms of this Agreement at no cost to Lessor, or (h) pursue any fees for enforcing any part of this Lease. LESSEE ACKNOWLEDGES AND FULLY UNDERSTANDS THAT LESSEE MAY HAVE THE LEGAL RIGHT TO AN OPPORTUNITY FOR A HEARING PRIOR TO REPOSSESSION OF THE EQUIPMENT DESCRIBED IN THIS AGREEMENT AND ANY SUBSEQUENT SCHEDULES, AMENDMENTS, OR ENDORSEMENTS HERETO IN THE EVENT OF LESSEE'S DEFAULT UNDER THE TERMS AND CONDITIONS OF THIS AGREEMENT, WITH FUL KNOWLEDGE OF THIS RIGHT, LESSEE, BY EXECUTING THIS LEASE AGREEMENT HEREBY WAIVES THE SAME.

**16. LESSEE'S INSPECTION.** Lessee shall inspect the equipment within five (5) business days after its arrival. Unless within five business days, Lessee gives written notice to Lessor specifying any defect in or other proper objection to the equipment, Lessee agrees that it shall be conclusively presumed as between Lessor and Lessee, that Lessee has fully inspected the equipment, that equipment is in full compliance with the terms of this lease, and in good condition and repair, and that Lessee is satisfied with and has accepted the equipment. In case Lessee gives such written notice with respect to any item of the equipment, Lessee shall, on demand by Lessor, pay Lessor any amounts theretofore paid or owing to Lessor in respect to the purchase of such item of equipment and upon such payment Lessee shall be subrogated to Lessor's claim, if any, against the manufacturer or other supplier thereof.

**17. ATTORNEY'S FEES.** In the event of any action at law or suit in equity in relation to this lease, Lessee, in addition to all other sums which Lessee may be called upon to pay, will pay to Lessor a reasonable sum for its attorney's fees.

**18. HOLDING OVER.** Any use of equipment by Lessee beyond the terms of any lease hereunder shall be deemed an extension of the original lease on a month-to-month basis and all obligations of Lessee shall continue during such holding over. During any such holding over, Lessor may terminate upon possession of the equipment upon demand after thirty (30) days written notice to Lessee.

**19. NON WAIVER.** No waiver of any of Lessee's obligations, conditions, or covenants shall be deemed to take place except upon written waiver that may be in writing and signed by Lessor.

**20. APPLICABLE LAW.** This equipment Lease Agreement shall be of no force and effect until accepted in writing by an officer of Lessor at Knoxville, Tennessee. Upon such acceptance this Lease shall be regarded as a Tennessee contract to be governed by and construed according to the laws of the State of Tennessee. In the event any dispute arising under the terms of this Agreement shall require litigation, the proper and sole forum for such litigation shall be the courts of law or equity in Knox County, Tennessee.

**21. BOOKS AND RECORDS.** Lessee shall keep books and records in accordance with good accounting practice and shall deliver to Lessor balance sheets, profit and loss statements and any other financial information in such form and at such times as Lessor may require.

**22. NATURE OF TRANSACTION.** Lessor makes no representation, express or implied, concerning the legal or accounting character of the transaction evidenced hereby for tax or other purposes. Lessee is advised to consult with tax counsel or other professional for guidance.

**23. NOTICES.** All notices required or permitted under any lease hereunder shall be sufficient if delivered personally or mailed to party at the address set forth herein. Any such notice shall be effective48 hours after it has been deposited in the United States mail, duly addressed and postage prepaid.

**24. SECURITY DEPOSIT.** The amount of the security deposit paid by Lessee is stated on the front page of this Lease Agreement. This security deposit is paid by Lessee to secure Lessee's covenants under the terms of this Lease. The parties agree that said deposit will not bear interest and may be commingled with other funds of Lessor. Further, in the event of any default under the terms of this Agreement said security deposit, at Lessor's option and total discretion, may be applied to satisfy any obligation of Lessee which may be in default under the terms of this Agreement. The payment of this security deposit and its existence shall not excuse in any way Lessee from any obligations under the terms of this Agreement.

**25. FURTHER ASSURANCE.** Lessee shall execute and deliver to Lessor, upon Lessor's request, such instruments and assurances as Lessor deems necessary or advisable for the confirmation or perfection of this lease and Lessor's rights hereunder. Where so provided by law Lessor may execute and file evidence of its ownership in said equipment.

**26. LEASE IRREVOCABLE.** This lease is irrevocable for the full term hereof and the rent shall not abate by any reason of termination of Lessee's right of possession and/or the taking of possession by the Lessor or any other reason.

**27. ENTIRE AGREEMENT.** This instrument constitutes the entire agreement between parties. No employee or agent is authorized to bind or modify any term hereof.

**28. OFFSET.** Lessee hereby waives any existing or future claims for offset against rent or any other payments which Lessee is obligated to pay to Lessor under the terms of this Lease Agreement.

**29. UCC FILINGS.** Lessor and Lessee agree that a copy or reproduction of this Lease may be filed as a financing statement and shall be sufficient as a financing statement under the Uniform Commercial Code. Lessee shall execute or obtain and deliver to Lessor, upon Lessor's request, such instruments, financing statements and assurances, including without limitation, waivers of interest of owners or mortgagees or real estate upon which the equipment is located, as Lessor deems necessary or advisable for the confirmation, protection or perfection of this Lease and Lessor's rights hereunder and will pay all costs incident thereto. Lessor may file or record a financing statement with respect to this Lease or the equipment so as to give notice to any interested parties. Any such execution, delivery, filing shall not be deemed factors in determining whether any item of equipment is intended as security under the Uniform commercial code.

**30. LESSEE REPRESENTS AND WARRANTS THAT IT HAS THE FULL POWER, AUTHORITY AND LEGAL RIGHT TO ENTER INTO AND PERFORM THIS LEASE AND ANY EXHIBITS OR SCHEDULES HERETO, THAT IT WILL SUPPLY LESSOR WITH PROOF THAT ALL REQUISITE CORPORATE ACTION (IF LESSEE IS A CORPORATION) HAS BEEN TAKEN, THAT THE EXECUTION OF THIS LEASE, ANY EXHIBIT OR ANY SCHEDULE DOES NOT CONTRAVENE ANY AGREEMENT TO WHICH LESSEE IS A PARTY (INCLUDING ITS ARTICLES OF INCORPORATION OR BY-LAWS IF LESSEE IS A CORPORATION), AND THAT NO MORTGAGE DEED OF TRUST, CHARTER, LEASE OR OTHER LIEN OR SECURITY INTEREST OF ANY TYPE WHICH NOW COVERS OR AFFECTS ANY PROPERTY OR INTEREST OF LESSEE, WILL ATTACH TO THE EQUIPMENT.**



**Fountain Leasing, LLC**

January 25, 2018

Mark Brooks
BRI Utility Construction, Inc.
P.O. Box 2025
Dacula, Ga 30019

Dear Mr. Brooks:

I am pleased to offer the following commitment of lease financing on the following pieces of equipment:

| | |
|---|---|
| Lessee: | BRI Utility Construction, Inc. |
| Equipment: | 2006 Volvo A40D, Deere 350DLCExcavator |
| Lease Amount: | $210,000 |
| Term: | 48 Months |
| Payments: | $5,366.56 plus 6% tax |
| Purchase Option: | At the end of the lease you may purchase the equipment for $1.00 |
| Advance Payment: | This commitment requires (2) two advance payments which will be applied to the last rentals due. |

| | | |
|---|---|---|
| Doc fees: | | $300.00 |
| Advance payments | | $11,377.10 |
| UCC fees | | $20.00 |
| | Total | $11,697.10 |

P.O. Box 51768 • Knoxville, TN 37950 • Phone: (865) 583-0256 • Fax: (865) 583-0257
125 Town Park Drive • Suite 300 • Kennesaw, GA 30144 • Phone: (912) 674-5744
Website: www.fountainleasingllc.com
Case 3:20-cv-00145-CLC-HBG    Document 1    Filed 04/07/20    Page 16 of 23    PageID #: 16

Additional Terms &
Conditions:                This commitment requires the full Guaranties of:

                           1)  Mark Brooks
                           2)  BRI Utilities Construction, Inc.

Late Fee:                  2) A 5% late fee will be added to the payment if it is not received
                              Within the 10 day grace period.

Please note that the payments do not include the cost of insuring the equipment or the
cost of equipment maintenance.  Any and all information provided by your organization
will be treated as confidential.

If the above terms and conditions are acceptable, please sign below in the space provided
and return this document to Fountain Leasing, LLC along with the other signed lease
documents.

Thank you for your time and we look forward to working with you in the near future.

Sincerely

Ed Walraven
Vice President

Agreed and accepted this ___1st___ day of ___February___, 2018


Mark Brooks                          Title ___Pres.___


I reviewed this letter with Mark Brooks
at 7:35 Am on 2/1/18.
                    Ed Walraven

# Fountain Leasing, LLC

# LEASE AGREEMENT

| | |
|---|---|
| **LESSOR:** FOUNTAIN LEASING, LLC<br>8331 E. Walker Springs Ln, Suite 203<br>Knoxville, TN 37923 | **Lease No:** 2018 - 0203 |

| LESSEE: | | | | Supplier: | Nasser Heavy Equipment, Inc. | | |
|---|---|---|---|---|---|---|---|
| Contact: | **Mark Brooks** | Phone: | **(770) 237-8990** | Sales Person: | **Nasser** | Phone: | **(770) 995-6663** |
| Full Legal Name: | **BRI Utility Construction, Inc.** | | | Address: | **525 Hurricane Shoals Rd** | | |
| Street Address: | **P.O. Box 2025** | | | City: | **Lawenceville** | St: **Ga** | Zip: **30046** |
| City: | **Dacula** | St: **Ga** | Zip: **30019** | | | | |

| QUANTITY/ ITEM DESCRIPTION | MODEL NO. | SERIAL NO. |
|---|---|---|
| **2006 Volvo A40D Off Road Truck S/N 12881 2011 Deere 350DLC Excavator S/N 806975** | | |
| **See Exhibit A** | | |

EQUIPMENT LOCATION, IF OTHER THAN ABOVE ADDRESS OF APPLICANT-LESSEE

| RENTAL TERMS | | RENTAL PAYMENT AMOUNT | | SECURITY DEPOSIT(s) | |
|---|---|---|---|---|---|
| Rent Commencement Date: | | Payments of | $5,366.56 | Check For This Amount Must Accompany Lease Application | |
| Terms in months from Rent Commencement Date | **48** Mos. | Tax: | $321.99 | **$11,697.10** | |
| Rental Payment Period is Monthly Unless Otherwise Indicated | | Total | $5,688.55 | Last **2** Month(s) payment(s).<br>(Includes Fees, and State and County Taxes as Required) | |

## PERSONAL GUARANTY

The undersigned guarantors jointly and severally unconditionally guarantee the prompt payment when due of each monthly rental payment due and payable under the foregoing Lease Agreement. To enforce the liability of guarantors hereunder, Lessor shall not be required, first to (a) give guarantors notice of Lessee's default, (b) repossess the equipment, or (c) attempt to enforce the liability of Lessee under the Lease Agreement. Lessor may from time to time accept late payments of rental and may extend the terms of this Lease Agreement without defeating or diminishing this continuing guaranty. This is a guarantee of payment and not of collection.

The Guarantors acknowledge that execution of this guarantee is a material part of the consideration upon which Lessor relies in consummating this Lease Agreement and that this guarantee is executed to the Lessor to consummate the Lease Agreement.

By: X _[signature]_  Mark Brooks    X _____ (Signature(s))    Date X **2-1-18**

**1. LEASE:** Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the unit(s) of machinery, equipment, chattels, or other personal property and equipment, described in this Lease, described in any addenda subsequently entered into by the parties and incorporated herein by reference, hereafter referred to as the "Equipment," upon the terms and conditions herein set forth in this Lease Agreement. Under this Lease Agreement the term "Rental Commencement Date" Shall be the date that the equipment is delivered to and accepted by Lessee. The term "Commitment Date" shall be the earlier of the date this lease Agreement is executed by Lessee or the date lessee becomes liable for the cost of the equipment. The term of this lease shall commence on the "Rental Commencement Date", and the first period rental shall be paid on that date. Subsequent monthly rent due during the lease term shall be made on the same date of each successive calendar month. If any rental payment is not received within 10 days of the due date a late charge of no less than 5% of the monthly payment amount shall be assessed.

Lessor acknowledges receipt of the first period rent. Lessee agrees to pay the remaining rent at such times and in such amounts as stated above until the total rent shall have been paid in full pursuant to the terms hereof. Any amounts received by Lessor upon execution of this Lease by Lessee in excess of the first period rental and any other sums required to be paid by Lessee shall be held as security for Lessee's faithful performance of the terms of this Lease. The amount of the Security Deposit to be paid by Lessee is specified above. All payments of rent shall be made at the office of Lessor at its address set forth in this Agreement or at such other places as Lessor may designate in writing. Lessee specifically authorizes Lessor to insert in this Lease, and any and all other documents related to this Lease, Agreements or financial statements, information relating to serial numbers, equipment descriptions, costs, and other identification data. Further, Lessee authorizes Lessor to fill in dates called for under the terms of this Lease. All rental payments shall be made punctually on the rental date set forth in this Lease, and all rental payments which fall due on a nonbusiness day or holiday will be due on the next regular business day of Lessor.

**2. RENTALS:** Rent set forth above is an estimate, and shall be adjusted proportionally if Lessor's cost of purchasing and delivering the Equipment to Lessee, including taxes, transportation charges and other charges differs from the estimated cost of such Equipment. Lessee hereby authorizes Lessor to correct the figures and increase or decrease the rental set forth above when Lessor's actual cost for the Equipment is known.

**3. WARRANTIES:** Lessee acknowledges and agrees that neither the supplier nor any salesman or other agent of the supplier is an agent of the Lessor. NO SALESMAN OR AGENT OF SUPPLIER IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE, and no representation as to the equipment or any other matter by the supplier shall in any way bind Lessor or perform its other obligations as set forth herein.

**4. SELECTION OF EQUIPMENT:** LESSEE ACKNOWLEDGES AND AGREES THAT THE EQUIPMENT IS OF A SIZE, DESIGN, CAPACITY AND MANUFACTURE SELECTED BY LESSEE AND LESSEE ACKNOWLEDGES THAT LESSOR IS SPECIFICALLY AUTHORIZED TO ORDER AND PURCHASE THE EQUIPMENT COVERED BY THE TERMS OF THIS LEASE; THAT SUCH PROPERTY IS IN GOOD OPERATING ORDER, REPAIR, CONDITION, AND APPEARANCE; THAT LESSEE IS SATISFIED THAT THE SAME IS SUITABLE FOR ITS PURPOSES. LESSOR IS NOT A MANUFACTURER OF THE EQUIPMENT OR A DEALER IN SIMILAR EQUIPMENT, DOES NOT INSPECT THE EQUIPMENT PRIOR TO DELIVERY TO LESSEE, AND HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATION, WARRANTY OR COVENANT WITH RESPECT TO THE CONDITION, QUALITY, DURABILITY, SUITABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR MERCHANTABILITY OF THE EQUIPMENT IN ANY RESPECT, OR ANY OTHER REPRESENTATION, WARRANTY OR COVENANT, EXPRESS, OR IMPLIED. LESSOR SHALL NOT BE LIABLE TO LESSEE FOR ANY LIABILITY, LOSS, OR DAMAGE CAUSED OR ALLEGED TO BE CAUSED DIRECTLY OR INDIRECTLY BY THE EQUIPMENT. LESSEE HAS SELECTED THE PROPERTY TO BE LEASED AND IT IS ORDERED BY LESSOR FOR THIS LESSEE AT LESSEE'S ENTIRE RISK AND DISCRETION. IF APPLICABLE, ANY SERVICES OR MAINTENANCE CONTRACTS RELATING TO THE USE AND MAINTENANCE OF THE EQUIPMENT SHALL BE STRICTLY BETWEEN THE LESSEE AND THE PROVIDER OF THOSE SERVICES OR MAINTENANCE, AND LESSOR IS RELIEVED OF ANY RESPONSIBILITY FOR SUCH SERVICE CONTRACTS OR MAINTENANCE CONTRACTS. LESSEE AGREES TO BE RESPONSIBLE FOR ANY REPAIR, ADJUSTMENT, MAINTENANCE, SERVICE, AND/OR REPLACEMENT PARTS. LESSEE WAIVES ALL RIGHTS TO MAKE CLAIMS AGAINST LESSOR AND LESSOR'S ASSIGNEE FOR BREACH ON ANY WARRANTY OF ANY KIND WHATSOEVER, AND LESSEE LEASES THE EQUIPMENT "AS IS." LESSOR HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATION, WARRANTY OR COVENANT THAT THE EQUIPMENT COVERED BY THE TERMS OF THIS LEASE AGREEMENT COMPLIES WITH ANY GOVERNMENT REGULATIONS OR STANDARDS. There shall be no abatement of the rentals specified within this contract. During the period of any lease hereunder, in which Lessee renders faithful performance of its obligations, Lessor hereby assigns, to the extent assignable to Lessee, any factory or dealer warranty, whether express or implied on the equipment covered by any lease hereunder. Lessor shall have no obligation whatsoever to make any claim on such warranty. Any recovery under such a warranty shall be made payable jointly to Lessee and Lessor. All proceeds of such a warranty recovery shall be used to repair or replace the equipment. Lessor authorizes Lessee to dictate whatever service to the equipment the manufacturer customarily renders provided that such service shall not be at the expense of Lessor.

THIS LEASE CONTAINS ADDITIONAL PROVISIONS SET FORTH ON THE REVERSE SIDE HEREOF, ALL OF WHICH ARE MADE A PART OF THIS LEASE.

| LESSOR: FOUNTAIN LEASING, LLC | DATED X **2-1-18** |
|---|---|
| | LESSEE: BRI Utility Construction, Inc.<br>(Full Legal Name – Same as Above) |
| SIGNATURE _[signature]_ | X _[signature]_<br>SIGNATURE |
| TITLE _Vice President_ | TITLE x **VP** |

**5. OWNERSHIP LESSOR.** Each item of the equipment lease hereunder with in the lease. The equipment, is and shall at all times remain personal property, notwithstanding its being fixed or attached to real estate in any manner whatsoever shall affix and keep plates or decals identifying Lessor as owner of equipment upon a prominent place on each item of the equipment. Lessee will obtain for the Lessor any and all waivers of right, title, and interest in the equipment under lease from any mortgagee or landlord whatsoever. The only interest Lessee shall have in the equipment is that of lessee under this lease.

**6. USE.** So long as Lessee shall not be in default under this lease, Lessee may possess and use the equipment in accordance with this lease. Lessee shall at all times at its own cost and expense: (a) comply with all laws, ordinances or regulations relating to the use, operation or maintenance of the equipment; (b) put the equipment only to the use contemplated by the manufacturer; (c) keep and maintain equipment in first class order, repair, condition, and appearance; (d) keep the equipment at the location listed above and not permit the equipment to be removed without prior written consent of the Lessor. Further, during the term of this Agreement Lessee will not allow the subject equipment to be services or maintained by other than an authorized manufacturer, manufacturer's representative, or service agent.

**7. LICENSING, REGISTRATION, AND TAXES.** Lessee shall obtain such licensing and registration of the equipment as is required by law. AS additional rent, Lessee shall pay and discharge when due all license and registration fees, assessments, sales, use, property, excise, ad valorem, and all other taxes, governmental charges, and fees (excluding any tax measured by Lessor's net income) together with any penalties, fines, or interests applicable thereto, now or hereafter imposed by any state, federal, or local government upon or relating to the equipment or the use, registration, rental, shipment, transportation, delivery, or operation thereof, whether the same be payable by or assessed to Lessor or Lessee.

**8. LESSOR'S INSPECTION.** Lessor shall have the right, during normal business hours, to enter the premises where the equipment may be located for the purpose of inspecting and examining the equipment to insure compliance by Lessee, with its obligations under this Lease. Lessee shall immediately notify Lessor of any accident connected with the malfunctioning or operation of the equipment including in such report, the time, place and nature of the accident, damage caused to property, the names and addresses of persons injured, and of witnesses and such other information as may be pertinent to Lessor's investigation of such accident. Lessee shall notify Lessor immediately of any attachment or other judicial process affecting any item of equipment leased under the terms of this Agreement.

**9. INDEMNITY.** Lessee assumes all risk and liability and shall indemnify Lessor from and against any and all claims, actions, suits, proceedings, costs, expenses, damages, and liabilities, including reasonable attorney's fees resulting from the use, operation, or storage of the equipment and for injuries or death to persons or damage to property arising there from, regardless of the manner in which or to whom, or to what property the injury or damage occurs. Lessee further indemnifies Lessor, its successors, assigns, and agents from any and all claims, actions, damages, liabilities, and expenses including reasonable attorney's fees, arising out of the equipment, including without limitation, the manufacture, election delivery, possession, use, operation or return of the equipment. Lessee will not assert against Lessor any claim arising from a breach of warranty by an equipment vendor or manufacturer. Further, Lessee will make no claim against Lessor for loss of anticipatory profits or other consequential, direct or indirect damages. Lessee agrees to indemnify Lessor against all claims or trademark, patent, or copyright infringement.

**10. ASSIGNMENT BY LESSEE.** Lessee shall not assign, pledge, or hypothecate any lease hereunder, nor shall Lessee sublet or lend the equipment or any part thereof without the prior written consent of Lessor. It is anticipated that no assignment or assignments will be approved by Lessor.

**11. ASSIGNMENT BY LESSOR.** Lessor may assign, pledge, or in any other way transfer any lease hereunder, either in whole or in part, without notice to Lessee.

**12. LOSS AND DAMAGE.** LESSEE ASSUMES ALL RISK OF LOSS OR DAMAGE TO THE EQUIPMENT FROM ANY AND EVERY CAUSE WHATSOEVER, WHETHER OR NOT SUCH LOSS OR DAMAGE IS COVERED BY INSURANCE OR THE EQUIPMENT. No loss or damage to the equipment or to any part thereof shall relieve Lessee of any lease hereunder. In the event of loss or damage, Lessor shall have the option to require Lessee to: (a) repair or restore the equipment to good condition and working order, or (b) replace the equipment with similar equipment in good repair, condition or working order with clear title thereto in the name of Lessor or (c) pay Lessor in cash the "stipulated loss value", which is defined as the greater of (1) the then current value of such equipment immediately prior to the loss or damage as determined by the Lessor, or (2) the then unpaid balance of rentals for the remaining term applicable to such equipment plus a reasonable residual value. Upon payment of the stipulated loss value, any lease hereunder shall terminate only with respect to the item of equipment for which Lessee has paid, and Lessee shall become entitled to said equipment in its then existing condition without any warranty of Lessor.

**13. INSURANCE.** Lessee, at its own expense, shall keep equipment insured against all risk of loss or damage from every cause whatsoever, for not less than the replacement cost when new of said leased equipment without consideration for depreciation and shall carry public liability insurance, both personal injury, and property damage covering the equipment and LESSEE SHALL BE LIABLE FOR ANY LOSS NOT COVERED BY INSURANCE. All said insurance shall be in form and amount with companies satisfactory to Lessor. All insurance for loss or damage shall provide that Lessor is a loss payee and that losses, if any, shall be payable to Lessor; and all such liability insurance shall include Lessor as named insured. The proceeds of any public liability or property damage insurance shall be payable first to the Lessor, to the extent of Lessor's ability. If any, the balance, payable to Lessee. In the event of loss or damage, Lessor shall have the option to require Lessee to repair, replace, restore, collision, or other insurance providing coverage of risks of loss to owners of interest in the property subject to any lease hereunder, shall be payable solely to Lessor and shall be applied by Lessor toward payment of the obligations of the Lessee under paragraph 12 hereof, the balance, if any, of the proceeds to be the property of Lessee. Lessee shall pay the premiums therefore, and deliver to Lessor, policies of insurance or duplicates thereof or other evidence satisfactory to Lessor of insurance coverage. Each insurer shall agree by endorsement upon the policy of policies issued by it, or by independent instrument furnished to Lessor, that it will give Lessor 30 days prior written notice to the effective date of any alteration or cancellation of such policy. Lessee hereby, irrevocably appoints Lessor as Lessee's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any said insurance policy. In case of the failure of Lessee to procure or maintain said insurance effective on the date of shipment of the equipment, Lessor shall have the right, but shall not be obligated, to effect such insurance or compliance on behalf of Lessee. In that event, all monies spent by and expenses of Lessor effecting such insurance or compliance, shall be deemed to be additional rent and shall become due and owed forthwith and Lessee pay the same with the monthly payment of rent next due after receipt of notice from Lessor.

**14. SURRENDER.** Upon the expiration or early termination of any lease hereunder, Lessee shall return each item of equipment to Lessor, free of all advertising or insignia placed thereon by Lessee, in good condition, repair or working order, ordinary wear and tear accepted. The equipment shall be surrendered by Lessee at its sole cost and expense; either, (a) By delivering the equipment to any location selected by Lessor within the country in which equipment was delivered to Lessee or within the country to which the equipment was moved with Lessor's consent or, (b) By delivering same as directed by Lessor, freight collected. If, upon termination of this Agreement, for any reason, Lessee fails or refuses to return equipment or Lessee is herein provided, Lessor, or Lessor's agents or assigns, shall have the right without notice or demand to enter Lessee's premises or any premises where the equipment may be found, forcibly if necessary, and take possession of and remove the equipment without legal process and without liability or suit, action, or other proceeding by the lessee, and remove the same. Lessee hereby releases any claim or right of action of trespass or damages caused by reason of such entry and removal.

Lessee shall have no option to purchase or otherwise acquire title to or ownership of any of the equipment and shall have only the right to use the same under the terms and provisions of this lease, provided, however, that if the lessee has paid in full all rentals owing hereunder and is not then in default hereunder, and if the lessee places after "Purchase Price" below has been filled in, then Lessee shall have the option upon giving at least 30 days' prior written notice to Lessor to purchase said equipment: AS AND WHERE IS, without any warranty whatsoever on the part of the Lessor, upon payment of the Purchase Price. The Purchase Price shall be $____.

**15. DEFAULT.** If the Lessee defaults in the payment of any sum of money to be paid under any lease hereunder, and such default continues for a period of 5 days after the date on which the same shall become due and payable, or if Lessee fails to observe or perform any covenant, condition, or obligation, required to be performed by Lessee under any lease hereunder, and Lessee has not taken steps to remedy such default within 5 days after the occurrence of such default, or if Lessee or any guarantor of Lessee's obligations commences any act of bankruptcy, or any bankruptcy act or insolvency law is commenced by or against the Lessee, or if a writ of attachment or execution is levied on any item of equipment and is not discharged within 5 days thereafter, or if a receiver or trustee is appointed to take possession of any item of equipment leased hereunder, or if the condition of Lessee's affairs or the affairs of any guarantor of Lessee's obligations change so as to in the Lessor's opinion materially impair the Lessor's security or increase the credit risk involved, or if Lessee defaults on any other lease Agreement entered into by and between Lessee and Lessor or any ther obligation for payment or borrowed money, or if any warranty, representation, or statement made or furnished by Lessee or any guarantor of Lessee's obligations for or on behalf of Lessee proves to be false or misleading in any material respect when made or furnished, or if there is an occurrence of loss, theft, substantial damage or destruction attempted sale by the Lessee, subletting, or partial possession with any or all of the equipment by Lessee, or any breach of representation or warranty in the Agreement by Lessee, or any assignment of the equipment covered by the terms of this lease for the benefit of Lessee's creditors, then, Lessor, at its option, may exercise one or more of the following remedies with respect to any lease hereunder (a) declare the remaining unpaid installments of rent at once due and payable or (b) terminate this Lease and, with or without legal process, enter in or upon Lessee's premises and remove said property with or without notice to Lessee, and subsequently sue for damages suffered from the breach by Lessee, and Lessee hereby releases any claim or right of action for trespass or damages caused by reason of such entry and removal, or (c) terminate the lease and, with or without legal process, enter in or upon Lessee's premises and subsequently with or without notice to Lessee and quit possession of the property at such price as Lessor determines is reasonable and apply the proceeds of the sale or lease first to the expense of the sale or lease, including reasonable attorney's fees, and second to the total unpaid rental due for the term of this Lease and Lessee shall pay Lessor any deficiency or (d) Lessor may require Lessee to assemble the equipment and make it available to Lessor upon Lessor's request, or (e) Lessor may sell or lease the equipment at public or private sale or release without Lessee's permission, or (f) Lessor may recover monetary damages, or (g) Lessor may use Lessor's place of business for purposes of displaying and selling the equipment covered by the terms of this Agreement at no cost to Lessor, or (h) pursue any fees for enforcing any part of this Lease. LESSEE ACKNOWLEDGES AND FULLY UNDERSTANDS THAT LESSEE MAY HAVE THE LEGAL RIGHT TO AN OPPORTUNITY FOR A HEARING PRIOR TO REPOSSESSION OF THE EQUIPMENT DESCRIBED IN THIS AGREEMENT AND ANY SUBSEQUENT SCHEDULES, AMENDMENTS, OR ENDORSEMENTS HERETO. IN THE EVENT OF LESSEE'S DEFAULT UNDER THE TERMS AND CONDITIONS OF THIS AGREEMENT, WITH FULL KNOWLEDGE OF THIS RIGHT, LESSEE, BY EXECUTING THIS EQUIPMENT LEASE AGREEMENT HEREBY WAIVES THE SAME.

**16. LESSEE'S INSPECTION.** Lessee shall inspect the equipment within five (5) business days after its arrival. Unless within five business days, Lessee gives written notice to Lessor specifying any defect in or other proper objection to the equipment, Lessee agrees that it shall be conclusively presumed as between Lessor and Lessee, that Lessee has fully inspected the equipment and acknowledges that in full compliance with the terms of this lease, and in good condition and repair, and that Lessee is satisfied with and has accepted the equipment. In case Lessee gives such written notice with respect to any item of the equipment, Lessee shall, on demand by Lessor, pay Lessor any amounts theretofore paid or owing by Lessor in respect to the purchase of such item of equipment and upon such payment Lessee shall be subrogated to Lessor's claim, if any, against the manufacturer or other supplier thereof.

**17. ATTORNEY'S FEES.** In the event of any action at law or suit in equity in relation to this lease, Lessee, in addition to all other sums which Lessee may be called upon to pay, will pay to Lessor a reasonable sum for its attorney's fees.

**18. HOLDING OVER.** Any use of equipment by Lessee beyond the terms of any lease hereunder shall be deemed an extension of the original lease on a month-to-month basis and all obligations of Lessee shall continue during such holding over. During any such holding over, Lessor may terminate such lease and take possession of the equipment upon demand after thirty (30) days written notice to Lessee.

**19. NON WAIVER.** No waiver of any of Lessee's obligations, conditions, or covenants shall be deemed to take place except such waiver that may be in writing and signed by Lessor.

**20. APPLICABLE LAW.** This equipment Lease Agreement shall be of no force and effect until accepted in writing by an officer of Lessor at Knoxville, Tennessee. Upon such acceptance this Lease shall be regarded as a Tennessee contract to be governed by and construed according to the laws of the State of Tennessee. In the event any dispute arising under the terms of this Agreement shall require litigation, the proper and sole forum for such litigation shall be the courts of law or equity in Knox County, Tennessee.

**21. BOOKS AND RECORDS.** Lessee shall keep books and records in accordance with good accounting practice and shall deliver to Lessor balance sheets, profit and loss statements and any other financial information in such form and at such times as Lessor may request.

**22. NATURE OF TRANSACTION.** Lessor makes no representation, express or implied, concerning the legal or accounting character of the transaction evidenced hereby for tax or other purposes. Lessee is advised to consult with its counsel or other professional for guidance.

**23. NOTICES.** All notices required or permitted under any lease hereunder shall be sufficient if delivered personally or mailed to party at the address set forth herein. Any such notice shall be effective 48 hours after it has been deposited in the United States mail, duly addressed and postage prepaid.

**24. SECURITY DEPOSIT.** The amount of the security deposit paid by Lessee is stated on the front page of this Lease Agreement. This security deposit is paid by Lessee to secure Lessee's covenants under the terms of this Lease. The parties agree that said deposit will not bear interest and may be commingled with other funds of Lessor. Further, in the event of any default under the terms of this Agreement said security deposit, at Lessor's option and sole discretion, may be applied to satisfy any obligation of Lessee which may be in default under the terms of this Agreement. The payment of this security deposit and its existence shall not excuse in any way Lessee from any obligations under the terms of this agreement.

**25. FURTHER ASSURANCE.** Lessee shall execute and deliver to Lessor, upon Lessor's request, such instruments and assurances as Lessor deems necessary or advisable for the confirmation or perfection of this Lease and Lessor's rights hereunder. Where so provided by law Lessor may execute and file evidence of its ownership in said equipment.

**26. LEASE IRREVOCABLE.** This lease is irrevocable for the full term hereof and the rent shall not abate by any reason of termination of Lessee's right of possession and/or the taking of possession by the Lessor or any other reason.

**27. ENTIRE AGREEMENT.** This instrument constitutes the entire agreement between parties. No employee or agent is authorized to bind or modify any term hereof.

**28. OFFSET.** Lessee hereby waives any existing or future claims for offset against rent or any other payments which Lessee is obligated to pay to Lessor under the terms of this Lease Agreement.

**29. UCC FILINGS.** Lessor and Lessee agree that a copy or reproduction of this lease may be filed as a financing statement and shall be sufficient as a financing statement under the Uniform Commercial Code. Lessee shall execute and obtain and deliver to Lessor, upon Lessor's request, such instruments, financing statements and assurances, including without limitation, waivers of interest of owners or mortgagees or real estate upon which the equipment is located, as Lessor deems necessary or advisable for the confirmation, perfection or perfection of the Lease and Lessor's rights hereunder. Lessor may file or record a financing statement with respect to this Lease or record of the equipment so as to give notice to any interested parties. Any such execution, delivery, filing or recording shall not be deemed factors in determining whether or not this Lease is intended as security under the Uniform commercial code.

**30. LESSEE REPRESENTS AND WARRANTS THAT IT HAS THE FULL POWER, AUTHORITY AND LEGAL RIGHT TO ENTER INTO AND PERFORM THIS LEASE AND ANY EXHIBITS OR SCHEDULES HERETO, THAT IT WILL SUPPLY LESSOR WITH PROOF THAT ALL REQUISITE CORPORATE ACTION (IF LESSEE IS A CORPORATION) HAS BEEN TAKEN, THAT THE EXECUTION OF THIS LEASE, ANY EXHIBIT OR ANY SCHEDULE, DOES NOT CONTRAVENE ANY AGREEMENT TO WHICH LESSEE IS A PARTY (INCLUDING ITS ARTICLES OF INCORPORATION OR BY-LAWS IF LESSEE IS A CORPORATION), AND THAT NO MORTGAGE DEED OF TRUST, CHARTER, LEASE OR OTHER LIEN OR SECURITY INTEREST OF ANY TYPE WHICH NOW COVERS OR AFFECTS ANY PROPERTY OR INTEREST OF LESSEE, WILL ATTACH TO THE EQUIPMENT.**



July 30, 2019

Mark Brooks (Corporation)
BRI Utility Construction, Inc
Post Office Box 2025
Dacula, GA 30019

Re:     One (1) 2003 John Deere 300D OffRoad Truck— SN Ending: R000769

Dear Mr. Brooks:

Pursuant to our previous conversations, I am pleased to offer the following commitment of lease financing for the equipment referenced below.  With that, our commitment is as follows:

| | |
|---|---|
| **Equipment:** | One (1) 2003 John Deere 300D OffRoad Truck |
| **Lease Amount:** | $65,000.00 |
| **Term:** | 42-months |
| **Payments:** | $1,977.28 per month    (including 6% Gwinnett County sales tax) |

**End of Lease Options:**    1)     At the end of the lease, the Lessee may terminate the lease for $1.00.

**Advance Payments:**   This commitment requires two advance payments, sales tax, UCC, and doc fees due at closing.  A breakdown of that amount is as follows:

| | |
|---|---|
| Advance Payments | $ 3,730.72 |
| UCC Filing Fees | $    20.00 |
| Sales Tax | $   223.84 |
| Doc Fees | $   350.00 |
| | **$ 4,324.56** |

**Additional Requirements:**    1)     This commitment requires the full joint & several personal guaranty of:
**Mark Brooks / BRI Utility Construction, Inc**

2)     This commitment requires additional collateral in the form of:
**N/A**

Fountain Leasing, LLC  •  366 Powder Springs Street, Suite 200  •  Marietta, GA 30064
Phone: (912) 674-5744  •  Website: www.fountainleasingllc.com

This commitment does not include the cost of insuring the equipment, maintenance or any applicable sales taxes. all of which are the responsibility of the lessee. **It is understood that Fountain Leasing, LLC, its employees and/or officers, do not provide tax, legal or accounting advice. This letter is not intended to provide, and should not be relied on for, tax, legal or accounting advice. You should consult your own tax, legal and accounting advisors before engaging in any transaction.**

Additionally, please note that payment remittance is required on a timely basis each month within 10 days of the payment due date. Should any payment be received and posted more than 10 days after its respective due date, a 5% late charge will be assessed and should be included in the next payment remittance. Further, should any check remitted for lease payment(s) be returned due to insufficient funds, a $100 charge will be assessed and should be included with the replacement of the insufficient funds check. Any and all information provided by your organization has been & will be treated as confidential. This commitment is contingent upon the satisfactory inspection/photograph of all equipment/collateral under the lease.

The terms and conditions of this commitment can be considered good and valid for a period of 10 days and therefore, shall expire on August 13, 2019. If this commitment is acceptable to you, please indicate by signature below:

**ACCEPTED:**

This commitment is accepted in its entirety as evidenced by the signatures of the parties below. Further, each party affirms and acknowledges that they have read this commitment in full & accept it as such. In addition, the undersigned affirms that the named lessee is a sole proprietorship and as such this equipment is for business/commercial use. Failure to formally accept this commitment by August 13, 2019 releases Fountain Leasing LLC of any binding commitment with regards to the lease described above.

_____ 7-31-2019
Mark Brooks                        Date

In closing, if you would like to see this proposal structured differently, please let me know as I can assist you in offering a number of different lease financing structures to meet your needs. Thank you for your time and I look forward to working with you in the near future.

Sincerely,
Fountain Leasing, LLC

Ed Walraven
Vice President

*I reviewed THis letter with Mark Brooks at 8:30 Am on - 7-31-18. Ed Walraven*

# Fountain Leasing, LLC

# LEASE AGREEMENT

| LESSOR: | FOUNTAIN LEASING, LLC |
| | 8331 E. Walker Springs Ln, Suite 203 |
| | Knoxville, TN 37923 |

**Lease No:** 2019-0735

| LESSEE: | |
| Contact: | **Mark Brooks** | Phone: | **(770) 237-8990** |
| Full Legal Name: | **BRI Utility Construction, Inc.** |
| Street Address: | **P.O. Box 2025** |
| City: | **Dacula** | St: **GA** Zip: **30019** |

| Supplier: | **Nasser Heavy Equipment, Inc** |
| Sales Person: | **Nasser Al-Anssi** | Phone: | **(770) 995-6663** |
| Address: | **525 Hurricane Shoals Road NE** |
| City: | **Lawrenceville** | St: **GA** Zip: **30046** |

## QUANTITY/ ITEM DESCRIPTION

| | MODEL NO. | SERIAL NO. |
| **2003 John Deere 300D OffRoad Truck - SN: R000769** | | |
| **See Exhibit A** | | |

EQUIPMENT, IF OTHER THAN ABOVE ADDRESS OF APPLICANT-LESSEE

| RENTAL TERMS | RENTAL PAYMENT AMOUNT | SECURITY DEPOSIT(s) |
|---|---|---|
| Rent Commencement Date: | 42 Payments of | **$1,865.36** | Check For This Amount Must Accompany Lease Application |
| Terms in months from Rent Commencement Date **42** Mos. | Tax: | **$111.92** | **$4,324.56** |
| Rental Payment Period is Monthly Unless Otherwise Indicated | Total | **$1,977.28** | Last **2** Month(s) payment(s) (Includes Fees, and State and County Taxes as Required) |

## PERSONAL GUARANTY

The undersigned guarantors jointly and severally unconditionally guarantee the prompt payment when due of each monthly rental payment due and payable under the foregoing Lease Agreement. To enforce the liability of guarantors hereunder, Lessor shall not be required, first to (a) give guarantors notice of Lessee's default; (b) repossess the equipment; or (c) attempt to enforce the liability of Lessee under the Lease Agreement. Lessor may from time to time accept late payments of rental and may extend the terms of this Lease Agreement without defeating or diminishing this continuing guaranty. This is a guarantee of payment and not of collection.

The Guarantor acknowledge the execution of this guarantee is a material part of the consideration upon which Lessor relies in consummating this Lease Agreement and that this guarantee is executed to the Lessor to consumate the Lease Agreement

By: X _[signature]_    Mark Brooks    X _Signature(s)_    Date X **7-31-2019**

**1. LEASE:** Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the unit(s) of machinery, equipment, chattels, or other personal property described in this Lease, described in any schedules attached hereto and incorporated herein and made a part hereof, or described in any addenda subsequently entered into by the parties and incorporated herein by reference, hereafter referred to as the "Equipment", upon the terms and conditions herein set forth in this Lease Agreement. Under this Lease Agreement the term "Rental Commencement Date" Shall be the date that the equipment is delivered to and accepted by Lessee. The term "Commitment Date" shall be the earlier of the date this lease Agreement is executed by Lessee or the date lessor becomes liable for the cost of the equipment. The Term of this lease shall commence on the "Rental Commencement Date", and the first period rental shall be paid on that date. Subsequent monthly rent due during the lease term shall be made on the same date of each successive calendar month. If any rental payment is not received within 10 days of the due date a late charge of no less than 5% of the monthly payment amount shall be assessed.
Lessee acknowledges receipt of the first period rent. Lessee agrees to pay the remaining rent at such times and in such amounts as stated above until the total rent shall have been paid in full pursuant to the terms hereof. Any amounts received by Lessor upon execution of this Lease by Lessee in excess of the first period rental and any sums required to be paid by Lessee shall be held as security for Lessee's faithful performance of the terms of this Lease. The amount of the Security Deposit to be paid by Lessee is specified above. All payments of rent shall be made at the office of Lessor at its address set forth in this Agreement or at such other place as Lessor may designate in writing. Lessee specifically authorizes Lessor to insert in this Lease, and any and all other documents related to this Lease, Agreements or financial statements, information relating to serial numbers, equipment descriptions, costs, and other identification data. Further, Lessee authorizes Lessor to fill in dates called for under the terms of this Lease. All rental payments shall be made punctually on the rental date set forth in this Lease, and all rental payments which fall due on a nonbusiness day or holiday will be due on the next regular business day of Lessor.

**2. RENTALS:** The rental set forth above is an estimate, and shall be adjusted proportionally if Lessor's cost of purchasing and delivering the Equipment to Lessee, including taxes, transportation charges and other charges differs from the estimated cost of such Equipment. Lessee hereby authorizes Lessor to correct the figures and increase or decrease the rental set forth above when Lessor's actual cost for the Equipment is known.

**3. WARRANTIES:** Lessee acknowledges and agrees that neither the supplier nor any salesman or other agent of the supplier is an agent of the Lessor. NO SALESMAN OR AGENT OF SUPPLIER IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE, and no representation as to the equipment or any other matter by the supplier shall in any way affect Lessee's duty to pay the rent and perform its other obligations as set forth herein.

**4. SELECTION OF EQUIPMENT:** LESSEE ACKNOWLEDGES AND AGREES THAT THE EQUIPMENT IS OF A SIZE, DESIGN, CAPACITY AND MANUFACTURE SELECTED BY LESSEE AND LESSEE ACKNOWLEDGES THAT LESSOR IS SPECIFICALLY AUTHORIZED TO ORDER AND PURCHASE THE EQUIPMENT COVERED BY THE TERMS OF THIS LEASE; THAT SUCH PROPERTY IS IN GOOD OPERATING ORDER, REPAIR, CONDITION, AND APPEARANCE. THAT LESSEE IS SATISFIED THAT THE SAME IS SUITABLE FOR ITS PURPOSES. LESSOR IS NOT A MANUFACTURER OF THE EQUIPMENT OR A DEALER IN SIMILAR EQUIPMENT, DOES NOT INSPECT THE EQUIPMENT PRIOR TO DELIVERY TO LESSEE, AND HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATION, WARRANTY OR COVENANT WITH RESPECT TO THE CONDITION, QUALITY, DURABILITY, SUITABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR MERCHANTABILITY OF THE EQUIPMENT IN ANY RESPECT, OR ANY OTHER REPRESENTATION, WARRANTY OR COVENANT, EXPRESS OR IMPLIED. LESSOR SHALL NOT BE LIABLE TO LESSEE FOR ANY LIABILITY, LOSS, OR DAMAGE CAUSED OR ALLEGED TO BE CAUSED DIRECTLY OR INDIRECTLY BY THE EQUIPMENT. LESSEE HAS SELECTED THE PROPERTY TO BE LEASED AND IT IS ORDERED BY LESSOR FOR THIS LESSEE AT LESSEE'S ENTIRE RISK AND DISCRETION. IF APPLICABLE, ANY SERVICES OR MAINTENANCE CONTRACTS RELATING TO THE USE AND MAINTENANCE OF THE EQUIPMENT SHALL BE STRICTLY BETWEEN THE LESSEE AND THE PROVIDER OF THOSE SERVICES OR MAINTENANCE, AND LESSOR IS RELIEVED OF ANY RESPONSIBILITY FOR SUCH SERVICE CONTRACTS OR MAINTENANCE CONTRACTS. LESSEE AGREES TO BE RESPONSIBLE FOR ANY REPAIR, ADJUSTMENT, MAINTENANCE, SERVICE, WORN-OUT AND OR REPLACEMENT PARTS. LESSEE WAIVES ALL RIGHTS TO MAKE CLAIMS AGAINST LESSOR AND LESSOR'S ASSIGNEE FOR BREACH OR ANY WARRANTY OF ANY KIND WHATSOEVER, AND LESSEE LEASES THE EQUIPMENT "AS IS." LESSOR HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATION, WARRANTY OR COVENANT THAT THE EQUIPMENT COVERED BY THE TERMS OF THIS LEASE AGREEMENT COMPLIES WITH ANY GOVERNMENT REGULATIONS OR STANDARDS. There shall be no abatement of the rentals specified within this contract. During the period of any lease hereunder, in which Lessee renders faithful performance of its obligations, Lessor hereby assigns, to the extent assignable to Lessee, any factory or dealer warranty, whether express or implied on the equipment covered by any lease hereunder. Lessor shall have no obligation whatsoever to make any claim on such warranty. Any recovery under such a warranty shall be made payable jointly to Lessee and Lessor. All proceeds of such a warranty recovery shall be used to repair or replace the equipment. Lessor authorizes Lessee to obtain whatever service to the equipment the manufacturer customarily renders provided that such service shall not be at the expense of Lessor.

THIS LEASE CONTAINS ADDITIONAL PROVISIONS SET FORTH ON THE REVERSE SIDE HEREOF, ALL OF WHICH ARE MADE A PART OF THIS LEASE.

| LESSOR: | FOUNTAIN LEASING, LLC | DATE X **7-31-209** |
| | | LESSEE: **BRI Utility Construction, Inc.** (Full Legal Name – Same as Above) |
| SIGNATURE _[signature]_ | | X _[signature]_ SIGNATURE |
| TITLE _Vice President_ | | X _Pres_ TITLE |

TERMS AND CONDITIONS OF LEASE (CONTINUED)

5. **OWNERSHIP LESSOR.** Each item of the equipment hereunder shall at all times remain the sole and exclusive property of the Lessor, and Lessee shall have no right, title or interest therein or thereto, except as expressly set forth in the lease. The equipment is, and shall at all times remain personal property notwithstanding its being affixed or attached to real estate in any manner whatsoever. Lessee shall affix and keep plates or decals identifying Lessor as owner of the equipment upon a prominent place on each item of the equipment. Lessee will obtain for the Lessor any and all waivers of right, title, and interest in the equipment upon demand from any mortgagee or landlord whatsoever. The only interest Lessee shall have in the equipment is that of lessee under this lease.

6. **USE.** So long as lessee shall not be in default under this lease, Lessee may possess and use the equipment in accordance with this lease. Lessee shall at all times at its own cost and expense: (a) comply with all the laws, ordinances, regulations relating to the use, operation or maintenance of the equipment; (b) put the equipment only to the use contemplated by the manufacturer; (c) keep and maintain equipment in first class order, repair, condition, and appearance; (d) keep the equipment at the location listed above and not permit the equipment to be removed without prior written consent of the Lessor. Further, during the term of this Agreement Lessee will not allow the subject equipment to be services or maintained by other than an authorized manufacturer, manufacturer's representative, or service agent.

7. **LICENSING, REGISTRATION, AND TAXES.** Lessee shall obtain such licensing and registration of the equipment as is required by law. AS additional rent, Lessee shall pay and discharge when due all license and registration fees, assessments, sales, use, property, excise, ad valorem, and all other taxes, governmental charges, and fees (excluding any tax measured by Lessor's net income) together with any penalties, fines, or interests applicable thereto, now or hereafter imposed by any state, federal, or local government upon or relating to the equipment or the use, registration, rental, shipment, transportation, delivery, or operation thereof, whether the same be payable by or assessed to Lessor or Lessee.

8. **LESSOR'S INSPECTION.** Lessor shall have the right, during normal business hours, to enter the premises where the equipment may be located for the purpose of inspecting and examining the equipment to insure compliance of Lessee, with its obligations under this lease. Lessee shall immediately notify Lessor of any accident connected with the malfunctioning or operation of the equipment including in such report, the time, place and nature of the accident, damage caused to property, the names and addresses of persons injured, and of witnesses and such other information as may be pertinent to Lessor's investigation of such accident. Lessee shall notify Lessor immediately of any attachment or other judicial process affecting any interest of the Lessor under the terms of this Agreement

9. **INDEMNITY.** Lessee assumes all risk and liability and shall indemnify Lessor from and against any and all claims, actions, suits, proceedings, costs, expenses, damages, and liabilities, including reasonable attorney's fees resulting from, the use, operation, or storage of the equipment and for injuries or death to persons or damage to property arising there from, regardless of the manner in which or to whom or to what property the injury or damage occurs. Lessee further indemnifies Lessor, its successors, assigns, and agents from any and all claims, actions, damages, liabilities, and expenses including reasonable attorney's fees, arising out of the equipment, including without limitation, the manufacturer, selection delivery, possession, use, operation or return of the equipment. Lessee will not assert against Lessor any claim arising from a breach of warranty by any manufacturer or manufacturer. Further, Lessee will make no claim against Lessor for loss of anticipatory profits or other consequential, direct or indirect damages. Lessee agrees to indemnify Lessor against all claims or trademark, patent, or copyright infringement.

10. **ASSIGNMENT BY LESSEE.** Lessee shall not assign, pledge, or hypothecate any lease hereunder, nor shall Lessee sublet or lend the equipment or any part thereof without the prior written consent of Lessor. It is anticipated that no assignment or assignments will be approved by Lessor.

11. **ASSIGNMENT BY LESSOR.** Lessor may assign, pledge, or in any other way transfer any lease hereunder either in whole or in part, without notice to the Lessee.

12. **LOSS AND DAMAGE.** LESSEE ASSUMES ALL RISK OF LOSS OR DAMAGE TO THE EQUIPMENT FROM ANY AND EVERY CAUSE WHATSOEVER, WHETHER OR NOT SUCH LOSS OR DAMAGE IS COVERED BY INSURANCE OR THE EQUIPMENT. No loss or damage to the equipment or any part thereof shall relieve Lessee of any obligation under any lease hereunder. In the event of loss or damage, Lessor shall have the option to require Lessee to: (a) repair or restore the equipment to good condition and working order, or (b) replace the equipment with similar equipment in good repair, condition or working order with clear title therein in the name of Lessor or (c) pay Lessor in the term applicable to such equipment plus a reasonable residual value. Upon payment of the stipulated loss value, any lease hereunder shall immediately terminate with respect to the item of equipment for which Lessee has paid, and Lessee shall become entitled to said equipment in its then existing condition without any warranty of Lessor.

13. **INSURANCE.** Lessee, at its own expense, shall keep equipment insured against all risk of loss or damage from every cause whatsoever, for not less than the replacement cost when new of said leased equipment without consideration for depreciation and shall carry public liability insurance, both personal injury, and property damage covering the equipment and LESSEE SHALL BE LIABLE FOR ANY LOSS NOT COVERED BY INSURANCE. All said insurance shall be in form and amount with companies satisfactory to Lessor. All insurance for loss or damage shall provide that Lessor is loss payee and that losses, if any, shall be payable to Lessor, and all such liability insurance shall include Lessor as named insured. The proceeds of any public liability or property damage insurance shall be payable first to the Lessor, to the extent of Lessor's ability, if any, the balance, payable to Lessee. The proceeds of any theft, fire, extended coverage, collision, or other insurance providing coverage of risks of loss or losses of interest in the property subject to any lease hereunder, shall be payable solely to Lessor and shall be applied by Lessor toward payment of the obligations of the Lessee under paragraph 12hereof, the balance, if any, of the proceeds to be the property of Lessee. Lessee shall pay the premiums therefore, and deliver to Lessor, policies of insurance or duplicates thereof or other evidence satisfactory to Lessor of insurance coverage. Each Insurer shall agree by endorsement upon the policy or policies issued by it, or by independent instrument furnished to Lessor, that it will give Lessor 30 days prior written notice to the effective date of any alteration or cancellation of such policy. Lessee hereby irrevocably appoints Lessor as Lessor's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any said insurance policy. In case of the failure of Lessee to procure or maintain said insurance effective on the date of shipment of the equipment, Lessor shall have the right, but shall not be obligated to effect the same with the monthly payment of rent next due after receipt of notice from Lessor.

14. **SURRENDER.** Upon the expiration or early termination of any lease hereunder, lessee shall return each item of equipment to Lessor, free of all advertising or insignia placed thereon by Lessee, in good condition, repair or working order, ordinary wear and tear accepted. The equipment shall be surrendered by Lessee at its sole cost and expense, either: (a) By delivering the equipment to any location selected by Lessor within the country in which equipment was delivered to Lessee or within the country to which the equipment was moved with Lessor's consent or, (b) By delivering same as directed by Lessor, freight collected. If, upon termination of this Agreement, for any reason, Lessee fails or refuses to return equipment to Lessor as herein provided, Lessor, or Lessor's agents or assigns, shall have the right without notice or demand to enter Lessee's premises or any premises where the equipment may be found, forcibly if necessary, and take possession of and remove the equipment without legal process and without liability or suit, action, or other proceeding by the lessee, and remove the same. Lessee hereby releases any claim or right of action of trespass or damages caused by reason of such entry and removal.

Lessee shall have no option to purchase or otherwise acquire title to or ownership of any of the equipment and shall have only the right to use the same under the terms and provisions of this lease, provided, however, that if the Lessee has paid in full all rentals owing hereunder and is not then in default hereunder, and if the blank space after "Purchase Price" below has been filled in, then Lessee shall have the option upon giving at least 30 days' prior written notice to Lessor to purchase said equipment, AS AND WHERE IS, without any warranty whatsoever on the part of the Lessor, upon payment of the Purchase Price. The Purchase Price shall be $___ _____.

15. **DEFAULT.** If the Lessee defaults in the payment of any sum of money to be paid under any lease hereunder, and such default continues for a period of 5 days after the date on which the same shall become due and payable, or if Lessee fails to observe or perform any covenant, condition, or obligation, required to be performed by Lessee under any lease hereunder; and Lessee has not taken steps to remedy such default within 5 days after the occurrence of such default, or if lessee or any guarantor of Lessee's obligations commence any act of bankruptcy, or any proceeding under any bankruptcy act or insolvency law is commenced by or against the Lessee, or if a writ of attachment or execution is levied on any item of equipment and is not discharged within 5 days thereafter, or if a receiver or trustee is appointed to take possession of any item of equipment leased hereunder, or if the condition of Lessee's affairs or the affairs of any guarantor of Lessee's obligations change so as to in the Lessor's opinion materially impair the Lessor's security or increase the credit risk involved, or if Lessee defaults in any other Lease Agreement entered into by and between Lessee and Lessor or any other obligation for payment or borrowed money, or if any warranty, representation, or statement made or furnished by lessee or any guarantor of Lessee's obligations for or on behalf of Lessee proves to be false or misleading in any material respect when made or furnished, or if there is an occurrence of loss, theft, substantial damage or destruction attempted sale by the Lessee, subletting, or partial possession with any or all of the equipment by Lessee, or any breach of representation or warranty in the Agreement by Lessee, or any assignment of the equipment covered by the terms of this lease for the benefit of Lessee's creditors, then: Lessor, at its option, may exercise one or more of the following remedies with respect to any lessee hereunder (a) declare the remaining unpaid installments of rent at once due and payable or (b) terminate this Lease and, with or without legal process, enter in or upon Lessee's premises and remove said property with or without notice to Lessee, and subsequently sue for damages suffered from the breach by Lessee, and Lessee hereby releases any claim or right of action for trespass or damages caused by reason of such entry or removal, and sell or otherwise dispose of the equipment at public or private sale at which time Lessor or Lessee, and subsequently sue for the breach by Lessee, and second to the total unpaid rental due for the term of this Lease and Lessee shall pay Lessor any deficiency or (d) Lessor may require Lessee to assemble the equipment and make it available to Lessor upon Lessor's request, or (e) Lessor may sell or lease the equipment at public or private sale or release without Lessee's permission, or (f) Lessor may recover monetary damages, or (g) Lessor may pursue any Lessor's place of business for purposes of displaying and selling the equipment covered by the terms of this Agreement at no cost to Lessor, or (h) pursue any part of this lease. LESSEE ACKNOWLEDGES AND FULLY UNDERSTANDS THAT LESSEE MAY HAVE THE LEGAL RIGHT TO AN OPPORTUNITY FOR A HEARING PRIOR TO REPOSSESSION OF THE EQUIPMENT DESCRIBED IN THIS AGREEMENT AND ANY SUBSEQUENT SCHEDULES, AMENDMENTS, OR ENDORSEMENTS HERETO IN THE EVENT OF LESSEE'S DEFAULT UNDER THE TERMS AND CONDITIONS OF THIS AGREEMENT, WITH FULL KNOWLEDGE OF THIS RIGHT, LESSEE, BY EXECUTING THIS LEASE AGREEMENT HEREBY WAIVES THE SAME.

16. **LESSEE'S INSPECTION.** Lessee shall inspect the equipment within five (5) business days after its arrival. Unless within five business days, Lessee gives written notice to Lessor specifying any defect in or other proper objection to the equipment, Lessee agrees that it shall be conclusively presumed as between Lessor and Lessee, that Lessee has fully inspected the equipment, that equipment is in full compliance with the terms of this lease, and in good condition and repair, and that Lessee is satisfied with and has accepted the equipment. In case Lessee gives such written notice with respect to any item of the equipment, Lessee shall, on demand by Lessor, pay Lessor any amounts theretofore paid or owing by Lessor in respect to the purchase of such item of equipment and upon such payment Lessee shall be subrogated to Lessor's claim, if any, against the manufacturer or other supplier thereof.

17. **ATTORNEY'S FEES.** In the event of any action at law or suit in equity in relation to this lease, Lessee, in addition to all other sums which Lessee may be called upon to pay, will pay to Lessor a reasonable sum for its attorney's fees.

18. **HOLDING OVER.** Any use of equipment by Lessee beyond the terms of any lease hereunder shall be deemed an extension of the original lease on a month-to-month basis and all obligations of Lessee shall continue during such holding over. During any such holding over, Lessor may terminate such lease and take possession of the equipment upon demand after thirty (30) days written notice to Lessee.

19. **NON WAIVER.** No waiver of any of Lessor's obligations, conditions, or covenants shall be deemed to take place except such waiver that may be in writing and signed by Lessor.

20. **APPLICABLE LAW.** This equipment Lease Agreement shall be of no force and effect until accepted in writing by an officer of Lessor at Knoxville, Tennessee. Upon such acceptance this Lease shall be regarded as a Tennessee contract to be governed by and construed according to the laws of the State of Tennessee. In the event any dispute arising under the terms of this Agreement shall require litigation, the proper and sole forum for such litigation shall be the courts of law or equity in Knox County, Tennessee.

21. **BOOKS AND RECORDS.** Lessee shall keep books and records in accordance with good accounting practice and shall deliver to Lessor balance sheets, profit and loss statements and any other financial information in such form and at such times as Lessor may require.

22. **NATURE OF TRANSACTION.** Lessor makes no representation, express or implied, concerning the legal or accounting character of the transaction evidenced hereby for tax or other purposes. Lessee is advised to consult with an counsel or other professional for guidance.

23. **NOTICES.** All notices required or permitted under any lease hereunder shall be sufficient if delivered personally or mailed to party at the address set forth herein. Any such notice shall be effective48 hours after it has been deposited in the United States mail, duly addressed and postage prepaid.

24. **SECURITY DEPOSIT.** The amount of the security deposit paid by Lessee is stated on the front page of this Lease Agreement. This security deposit is paid by Lessee to secure Lessee's covenants under the terms of this Lease. The parties agree that said deposit will bear interest and may be commingled with other funds of Lessor. Further, in the event of any default under the terms of this Agreement said security deposit, at Lessor's option and sole discretion, may is applied to satisfy any obligation of Lessee which may be in default under the terms of this Agreement. The payment of this security deposit and its existence shall not excuse in any way Lessee from any obligations under the terms of this agreement.

25. **FURTHER ASSURANCE.** Lessee shall execute and deliver to Lessor, upon Lessor's request, such instruments and assurances as Lessor deems necessary or advisable for the confirmation or perfection of this lease and Lessor's rights hereunder. Where so provided by law Lessor may lease execute and file evidence of its assignment of its said equipment.

26. **LEASE IRREVOCABLE.** This lease is irrevocable for the full term hereof and the rent shall not abate by any reason of termination of Lessee's right of possession and/or the taking of possession by the Lessor or any other reason.

27. **ENTIRE AGREEMENT.** This instrument constitutes the entire agreement between parties. No employee or agent is authorized to waive or modify any term hereof.

28. **OFFSET.** Lessee hereby waives any reliance or future claims for offset against rent or any other payments which Lessee is obligated to pay to Lessor under the terms of this Lease Agreement.

29. **UCC FILINGS.** Lessee agrees that a copy or reproduction of this lease may be filed as a financing statement and shall be sufficient as a financing statement under the Uniform Commercial Code. Lessee shall execute obtain and deliver to Lessor, upon Lessor's request, such instruments, financing statements and assurances, including without limitation, waivers of interest of owners or mortgagees or real estate upon which the equipment is located, as essor deems necessary or advisable for the confirmation, protection or perfection of this lease and Lessor's rights hereunder and will pay all costs incident thereto. Lessor may file or record a financing statement with respect to this Lease or e equipment so as to give notice to any interested parties. Any such execution, delivery, filing or recording shall not be deemed factors in determining whether or not this Lease is intended as security under the Uniform commercial code

30. **LESSEE REPRESENTS AND WARRANTS THAT IT HAS THE FULL POWER, AUTHORITY AND LEGAL RIGHT TO ENTER INTO AND PERFORM THIS LEASE AND ANY EXHIBITS OR SCHEDULES HERETO, HAT IT WILL SUPPLY LESSOR WITH PROOF THAT ALL REQUISITE CORPORATE ACTION (IF LESSEE IS A CORPORATION) HAS BEEN TAKEN, THAT THE EXECUTION OF THIS LEASE, AND EXHIBIT OR ANY CHEDULE, DOES NOT CONTRAVENE ANY AGREEMENT TO WHICH LESSEE IS A PARTY (INCLUDING ITS ARTICLES OF INCORPORATION OR BY-LAWS IF LESSEE IS A CORPORATION), AND THAT NO ORTGAGE DEED OF TRUST, CHARTER, LEASE OR OTHER LIEN OR SECURITY INTEREST OF ANY TYPE WHICH NOW COVERS OR AFFECTS ANY PROPERTY OR INTEREST OF LESSEE, WILL ATTACH TO THE QUIPMENT.**